## FRANCIS M. FUNK

*v.*

## ERASMUS D. BABBITT.

*Filed at Springfield June 13, 1895.*

1. PLEADING—*effect of going to trial without issue joined.* Going to trial without formal issue joined on a plea is a waiver of formal joinder, and the irregularity is cured by verdict.

2. BILLS AND NOTES—*legal effect of draft naming no drawee.* An instrument in the form of a draft, but naming no drawee, may be regarded, at the option of the payee, as a promissory note of the drawer, or as a draft, to which the maker sustains the triple relation of drawer, drawee and acceptor.

3. EVIDENCE—*what is not a conclusion of the witness.* Testimony that money obtained by a partner "was used in the firm business" is not objectionable as a conclusion.

4. PARTNERSHIP—*loan of money to individual partner.* One who loans money to an individual partner cannot hold the firm liable merely because such partner may have used the money in the firm business.

5. APPEALS AND ERRORS—*allowance of leading questions—how viewed on appeal.* The allowance of leading questions is so far in the discretion of the trial court that it will ground a reversal only when the discretion is palpably abused and substantial injury done.

6. INSTRUCTIONS—*a party cannot complain of the same error he commits.* One at whose request erroneous instructions are given can not complain of the same error in other instructions.

7. SAME—*should be viewed as ordinary men would view them.* The sense in which ordinary men and jurors would understand instructions, in the light of the evidence, is the test of their correctness.

*Funk v. Babbitt,* 55 Ill. App. 124, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

KERRICK & SPENCER, and FIFER & PHILLIPS, for appellant.

JOHN E. POLLOCK, and A. J. BARR, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was assumpsit, brought by Erasmus D. Babbitt, appellee, against Francis M. Funk, the appellant, and one Ira Lackey, as partners, under the firm name of Funk & Lackey. The fifteen special counts of the declaration counted upon fifteen promissory notes claimed to have been made by the firm to appellee, and the declaration also contained the common counts. The firm had been dissolved a year or more prior to the commencement of the suit. Lackey made default. Appellant interposed four pleas: non-assumpsit, no consideration, that he did not execute the notes, and denial of joint liability; and the two latter pleas were verified by affidavits. A jury trial resulted in a verdict and judgment in favor of appellee, and against both partners of the late firm, for $4240. There was an affirmance of the judgment upon the appeal of Funk to the Appellate Court, and he then brought the case here by this appeal.

It is claimed that the circuit court committed error in proceeding to trial without issue being formed upon the plea of non-assumpsit, and those in denial of the execution of the notes and of joint liability. All three of said pleas concluded to the country, and no formal *similiter* was added to either. It is the doctrine of this court that going to trial without formal issue being joined on a plea is a waiver of a formal joinder, and the irregularity is cured by verdict. *Anderson* v. *Jacobson*, 66 Ill. 522; *Strohm* v. *Hayes*, 70 id. 41; *People, use, etc.* v. *Weber*, 92 id. 288.

It is assigned as error that the trial court permitted to be introduced in evidence six of the written instruments purporting to be signed by the firm of Funk & Lackey. These several instruments were, in form, substantially like this:

"$350.00         BLOOMINGTON, ILL., *April 23, 1891.*

"Thirty days after date pay to the order of E. D. Babbitt $350, for value received.        FUNK & LACKEY."

Said instruments were declared on as promissory notes. It is urged that they are not notes, or even promises to pay, and, not being directed to any one, do not constitute drafts or orders, and in fact amount to no more than blank pieces of paper. They are, undoubtedly, very irregular and informal instruments, but they are not void as written evidences of indebtedness. A person may draw a bill upon himself, payable to a third person, in which case he is both drawer and drawee. Here the firm drew bills, but did not address them to any third person or persons, and it is therefore to be regarded that they were, in legal effect, addressed to themselves, as drawees, and the signatures of the firm to the several bills bound the firm both as drawers and acceptors. The instruments are inland bills of exchange, to which the firm sustains the triple relation of drawers, drawees and acceptors, and as the declaration contains the consolidated common counts, the bills were admissible in evidence under them. Moreover, the drawers and drawees being the same, the bills are, in legal effect, promissory notes, and may be treated as such, or as bills, at the holder's option. 1 Daniel on Neg. Inst. secs. 128, 129.

Complaint is made that counsel were permitted, over the objections of appellant, to ask numerous leading questions of Babbitt, the plaintiff below. On both sides of the case the rule excluding such questions on the direct examination of witnesses was rather loosely enforced—more so than is advisable. Greenleaf says, (1 Greenleaf on Evidence, sec. 435,) that when and under what circumstances a leading question may be put is a matter resting in the sound discretion of the court, and not a matter which can be assigned for error; and this court has held that a general objection to a question will not reach the objection of its being leading, and that trial courts must be allowed to exercise a large discretion on the subject of leading questions. (*Parmelee* v. *Austin*, 20 Ill. 35 ; *First Nat. Bank* v. *Dunbar*, 118 id. 625.) We do not

understand the law, as held in this State, to be that an assignment of error will not lie for permitting leading questions to be asked, but we do understand the doctrine to be that the matter of allowing such questions is so much a matter within the discretion of the trial court as that a judgment will not be reversed for a ruling in regard thereto, unless it is manifest that there has been a palpable abuse of discretion and also a substantial injury done.

Upon inspection of the record we find that in almost every instance the objections interposed were general objections, and not placed upon the ground that they were leading. In a comparatively few instances the objections were put upon that specific ground. But, so far as we can discover, in every such instance either the objections were made after the questions had been answered and no motions made to exclude, or the questions and answers were substantially repetitions of questions and answers already in the record, or else the inquiries were in regard to minor and unimportant matters. Moreover, Babbitt, at the time of his examination, was over eighty-two years of age, and it is apparent from the record that the infirmities of old age made it difficult to get his testimony upon the real matters involved in the controversy without to some extent resorting to direct and pointed interrogatories. Upon the whole, we are unable to come to the conclusion that the action and the rulings of the court in the premises show such a palpable and injurious abuse of discretion as to constitute reversible error.

It is claimed that the court erred in allowing Lackey to testify, in answer to leading questions, over the objections of appellant, that the money he got of Babbitt "was used in firm business." The examination was thus:

Q. "What was done with the money?—A. Used to pay debts of the firm. (Objection and exception by defendant's counsel.)

Q. "Was it used in the firm? (Objection by defendant.) A. Yes, sir. (Defendant excepted.)

The court: "That is all right, as far as it goes. (Defendant excepted.)

Q. "Was that money used in the firm business? (Objection by defendant, as calling for conclusion.) A. Yes, sir.

The court: "I suppose it is a matter of fact whether it was used that way or not. He may answer that." (Defendant excepted.)

We think that from the standpoint of the views already expressed this claim of error is not well made. The fifteen notes in suit, the first bearing date December 13, 1890, the last bearing date May 27, 1891, and the others bearing intermediate dates, were executed by Lackey, in the name of the firm, for moneys borrowed of appellee at said several times. The moneys were delivered in the form of checks on the People's Bank of Bloomington, signed by Babbitt, and payable to Funk & Lackey or bearer. Appellant and Lackey were, and for many years had been, partners in the retail drug business at Bloomington, under the firm name of Funk & Lackey. Lackey had the principal care and management of the business, Funk giving it but little personal attention. At the trial the theory of plaintiff below (appellee here) was, that he had loaned his money to the firm, and had taken the firm notes therefor, the money being delivered to and the notes signed by Lackey, one of the partners, acting in behalf of and as the agent of the firm. The theory of the defense was, that Lackey had borrowed the money as an individual, and for his own personal use, under an agreement to give the firm notes as security therefor, and that appellee had cognizance of these facts at the time of the transactions. There was evidence tending to prove each of these theories of the case.

The instructions that were given on the motion of appellee are not challenged. Appellant tendered to the court an instruction which read as follows:

4. "The court instructs the jury, that although they may believe, from the evidence, that the plaintiff loaned the money to the amount of the notes offered in evidence, and took such notes therefor, yet if the jury further believe, from the evidence, that such money was in fact borrowed for the use of Lackey, and not of the firm, and that the plaintiff knew such fact, (if it be a fact,) or if the jury believe that the plaintiff knew or had notice that Lackey had no power so to bind the firm, or that the money (if any) was not in good faith loaned to the firm, then, in either of such cases, the jury should find the issues for the defendant."

The court did not give said instruction as asked, but modified it by adding thereto, at its end, the following words: "Unless the plaintiff has proved, by preponderance of the evidence, that the firm of Funk & Lackey did, in fact, receive and use the money of the plaintiff," and the court then gave the instruction, as modified, to the jury. And the court made a like modification to three others of the instructions submitted by appellant, before giving them to the jury. But the court also gave to the jury, at the instance and upon the motion of appellant, two other instructions, which read as follows: .

1. "The court instructs the jury, that if the plaintiff has failed to prove, by a preponderance of the evidence, that Funk & Lackey received money, and if the jury further believe, from the evidence, that the money was loaned to Ira Lackey personally, then, in such case, the jury should find a verdict for the defendant, Funk. And that should be the verdict of the jury although it may appear, from the evidence, that Ira Lackey, at each of the times of making the several loans, as security therefor, gave to the plaintiff a note signed Funk & Lackey."

8. "The court instructs the jury, that before the plaintiff can recover in the case he must prove, by preponderance of the evidence, either one or both of the following: First, that the firm of Funk & Lackey actually received

his money; second, that he actually loaned it, in good faith, to the firm of Funk & Lackey, and in good faith received their note therefor, the law being that if the money was not received by the firm and the money was loaned to Ira Lackey personally, then the plaintiff can not recover, although at the time of making such loans the plaintiff, as security for his loans, took from Ira Lackey a note or notes signed by Funk & Lackey."

The modifications made by the court to instructions 4, 2, 5 and 7 did not correctly state the law. One partner has power to borrow money for partnership purposes and give the notes of the firm therefor. (*Walsh* v. *Lennon,* 98 Ill. 27.) But he cannot bind the firm of which he is a member by giving the firm note in satisfaction of or as security for his personal indebtedness. (*Wittram* v. *Van-Wormer,* 44 Ill. 525; *Wright* v. *Brosseau,* 73 id. 381.) And in *Watt* v. *Kirby,* 15 Ill. 200, this court said, that where the credit is originally given to one partner, the creditor can not hold the partners liable, although they may receive the benefit of the transaction; that the debt, being separate in its inception, does not become joint by the subsequent application of the funds to the purposes of the partnership.

We think, however, that although the modification made by the court misstated the law, yet that it did not constitute reversible error. This court has decided in numerous cases that a party cannot assign for error a ruling made at his own instance, and has no right to complain of an error in an instruction when like error appears in an instruction given at his request. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, and cases there cited.) Here it was not at the instance of appellee that an unsound proposition of law was incorporated in the instructions, but it was on the motion of appellant himself that it was brought into the case. That which the court thereafter did, of its own motion, was simply to harmonize the instructions tendered by appellant.

Appellant makes quite a plausible argument for the purpose of showing that the language in the instructions given at his instance,—*i. e.*, "that the firm of Funk & Lackey actually received the money" and "that Funk & Lackey received the money,"—has reference only to the original reception of the money from Babbitt at the time of the loans, whereas the language of the modifications made by the court,—*i. e.*, "that the firm of Funk & Lackey did, in fact, receive and use the money,"—is broader, and includes not only the case of an original reception of the money by the firm from Babbitt, but also the case of a receiving by the firm from Lackey, subsequent to an original reception of the same from Babbitt by Lackey, acting in his individual capacity, and not as agent of the firm. The state of the case was this: The testimony introduced by appellee tended to prove, among other things, that the money borrowed from Babbitt, although not entered on the firm books, was actually used for firm purposes, in paying firm indebtedness, etc., while the testimony introduced by appellant tended to prove, *inter alia*, that the borrowed money could not be traced on the books or to any use for firm purposes, and that it was appropriated to the personal and individual use of Lackey.

It is to be noted that the instructions proffered by appellant did not use any such expression as "actually received the money in the first instance," or "original reception of the money," or "received the money from Babbitt," or "subsequent reception of the money by the firm from Lackey." They simply called the attention of the jury to this question: Whether or not there had been an actual reception of the money by the firm, and left it wholly a matter of indifference whether such receiving of the money by the firm was from Babbitt and at the time of the loans, or subsequent to the original loans and from Lackey. The office of an instruction is to give knowledge and information to the jury, for immediate application to the subject matter before them. The test,

then, is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions. We think that, in the light of the testimony above referred to, the jury, when they were told, in the instructions given at the request of appellant, that they should pass upon the questions whether "the firm of Funk & Lackey actually received the money" and whether "Funk & Lackey received the money,"—their attention not being called to either the inquiry as to when it was received, (whether at the time of the loan or thereafter,) or to the inquiry whether it was received from Babbitt or from Lackey,—would understand that it was immaterial from whom or at what time the money was received, provided only the result was that the firm got the money and the benefit thereof.

We find no error in the record for which the judgment should be reversed. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*