## Supreme Court of Honor v. Ida Barker.

1. PLEADING—*Requisites of Special Pleas in Avoidance of Policies of Life Insurance.*—In an action upon a beneficiary certificate containing a provision that the order " will not pay the benefits of members who commit suicide except it be committed in the delirium resulting from illness, or while the member is under treatment for insanity or has been judicially declared to be insane, but in all cases not within said exceptions, the amount of money contributed to the benefit fund by such members shall be returned and paid to the beneficiaries out of said fund in lieu of the benefit," a special plea founded upon such provision should set it out entire, and aver that the insured committed suicide, but not in delirium resulting from illness, nor while under treatment for insanity, nor after he had been judicially declared insane, and that before the commencement of the action it tendered to the plaintiff the entire sum contributed by the deceased to the benefit fund; or in other words, such plea, to state a defense, must show that the suicide was such as by the contract of insurance relieved the company from the payments of benefits.

2. PRACTICE—*When the Filing of a Similiter is Waived.*—When a *similiter* only is lacking to complete the pleadings in an action at law and the parties proceed to trial without objection the *similiter* will be treated as waived.

3. SAME—*Where Parties go to Trial Without a Rejoinder.*—Where parties to a suit at law go to trial without a rejoinder, where such rejoinder must be special and the party does not take a rule upon his adversary to rejoin, or pray judgment for want of such rejoinder, a formal issue is waived and the irregularity is cured by the verdict.

4. PRESUMPTIONS—*From Circumstances Indicating Suicide.*—When a dead body of an insured person is found under circumstances indicat-

ing suicide, in the absence of proof to the contrary, the presumption is that his death resulted from negligence or accident rather than from suicide.

5. INSTRUCTIONS—*Telling the Jury How Much Weight Should be Given to Certain Evidence.*—An instruction which tells the jury how much weight should be given to the testimony is never proper.

6. APPELLATE COURT PRACTICE—*Grounds for a New Trial Must be Specified in the Motion.*—Where a party moving for a new trial files his points in writing, specifying the grounds of his motion, he waives all existing grounds for a new trial not so specified, and on appeal will be confined to the causes specified in his motion.

7. SAME—*What may be Reviewed Without a Motion for a New Trial.*—The action of the trial court in giving or refusing instructions may be reviewed without a motion for a new trial, but this rule does not apply where a motion for a new trial has been made and points filed entirely omitting the subject of giving or refusing instructions.

**Assumpsit**, on a beneficiary certificate. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

WM. B. RISSE and J. W. DOWNEY, attorneys for appellant.

C. E. ANTRAM, attorney for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Supreme Court of Honor, a beneficiary society, issued a certificate to Thomas P. Barker, agreeing upon his death to pay his wife, Ida Barker, from the benefit fund, one assessment not exceeding $2,000, subject to certain conditions therein stated. One of said conditions was as follows:

" This order will not pay the benefits of members who commit suicide, whether sane or insane, except it be committed in delirium resulting from illness, or while the member is under treatment for insanity or has been judicially declared to be insane, but in all cases not within said exceptions the amount of money contributed to the benefit fund by such members shall be returned and shall be paid to the beneficiaries out of said fund in lieu of the benefit."

Barker was instantly killed by the discharge of a gun, on May 10, 1899. His wife brought this suit to recover the $2,000 provided by the certificate. Her declaration con-

tained a special count upon the certificate and the common counts. Defendant filed the general issue, and a special plea charging that Barker committed suicide. At the trial it was admitted Barker· had paid all dues and was in good standing in the society; that proofs of death were duly furnished, and demand for payment had been duly made; and that one assessment would exceed $2,000. Plaintiff recovered a verdict for $2,000 and had judgment thereon. Defendant appeals.

The special plea was in bad form. It did not begin by alleging that plaintiff ought not to have or maintain his aforesaid action against defendant. It did not conclude its recital of facts with a verification. It prayed judgment· of the entire action, yet it did not aver that the cause of action stated in the several counts of plaintiff's declaration were one and the same, to wit, the cause of action in the first count thereof stated; yet its averments only related to the certificate stated and set forth in the first count, and contained no allegation which would make the plea a defense to the common counts. We conclude it was also bad in substance. It set out the entire provision above quoted from the certificate. It then only averred that Thomas P. Barker committed suicide, and that defendant before suit brought tendered plaintiff the entire sum contributed by deceased to the benefit fund. The clause quoted does not provide that the mere fact of suicide shall be a defense. The provision is that the order will not pay benefits of members who commit suicide, except it be committed in delirium resulting from. illness, or while the member is under treatment for insanity, or after the member has been judiciously declared insane. To make the plea good the pleader was bound to allege such a suicide as under the contract relieved defendant from the payment of benefits. Defendant should have averred not only that deceased committed suicide, but also that it was not committed in delirium resulting from illness, nor while deceased was under treatment for insanity, nor after he had been judicially declared insane. If the matter which might still leave

defendant liable were something outside of the contract, no doubt defendant would only be required to state facts creating a discharge under the contract pleaded, leaving plaintiff to reply the facts outside the contract. But where the very contract set out in the plea does not exonerate defendant in all cases of suicide, the plea, to state a defense, must show this was such a suicide as by the contract did relieve defendant from payment of benefits. No action was taken on this plea. It was not demurred to, nor was a replication thereto filed. As it set up new allegations of fact and did not conclude to the country, a mere *similiter* would not have been proper, but a special replication was required in order to raise an issue of fact. It is a familiar rule that where a *similiter* only is lacking it will be treated as filed. (Funk v. Babbitt, 156 Ill. 408.) This principle has also been applied where something more than a mere formal joinder was necessary. Thus, in Anderson v. Jacobson, 66 Ill. 522, to a plea of set-off plaintiff had replied a former recovery, which replication must necessarily have concluded with a verification, and the rejoinder might or might not have been a mere denial. The court held no error was committed in going to trial without a rejoinder, and that plaintiff had the right to prove his replication as fully as if there had been a joinder. So, in Strohm v. Hayes, 70 Ill. 51, the replication to the fifth plea set up a chattel mortgage. The parties went to trial without a rejoinder, which must have been special. As appellant did not rule the opposite party to rejoin, or pray judgment for want of a rejoinder, it was held a formal issue was waived and the irregularity cured by verdict. (Shreffler v. Nadelhoffer, 133 Ill. 536; Kaestner v. First Nat. Bank, 170 Ill. 322.) This rule does not apply to immaterial issues. (Armstrong v. Mock, 17 Ill. 166.) No question upon the pleadings was raised in the court below and no such question is raised or argued here, and as a question of pleading any informality is thereby waived. But the question what issue was tried is involved in the objection by defendant to the action of the court upon certain of defendant's instructions. Defend-

ant asked three instructions to the effect that if the jury believed Barker committed suicide their verdict should be for defendant. The court refused two, and gave the most formal of them after inserting the words " and that such suicide was not committed in delirium resulting from illness, or while the deceased was under treatment for insanity, or after he had been adjudged insane." If formal issue is treated as joined upon the special plea that deceased committed suicide, and if that issue was material, then this modification should not have been made. We have already shown we consider that issue immaterial. But if plaintiff had demurred to the plea defendant might have amended. We conclude if the case is treated as if defendant had filed a sufficient plea, stating facts which, under the clause quoted, would relieve it from liability, and as if formal issue had been joined upon that plea, defendant will certainly be treated as fairly as this record will allow. So considered, the action of the court upon said instructions was correct. The modification placed the defense upon the true ground, and only required what it was necessary should be established to make out the defense which defendant attempted to plead.

Barker was employed at the horse-shoe works at Joliet, and had been for several years. He had been ill a week or ten days so as to be unable to work, but had not been confined to the bed or house. He was a great hand to fish and hunt and kept fishing tackle and hunting apparatus in a storeroom upstairs in his house. He had a double-barreled shotgun sometimes kept there and sometimes in the bed-room downstairs. A fellow-workman who lived near by told him he had seen teal ducks on the drainage channel. Barker got down his gun three or four days before his death, and talked of going duck hunting. He took the gun to pieces for the purpose of cleaning it, but apparently put it together again without cleaning it. A neighbor borrowed the gun the day before deceased was killed, and returned it at night. On the day of his death Barker intended to go hunting, but gave it up on account of rain. He laid down

a part of the forenoon and a part of the afternoon but other parts of the day he was helping his wife clean house. He went at one time to get the mail. He made calls at the homes of two of his neighbors, and chatted with those who were in. To one witness he appeared depressed in spirits because the horse-shoe works had shut down, which would temporarily throw him out of employment. Others did not notice any appearance of despondency. During the day he told his wife he was not feeling well and was afraid he was losing his mind. With that exception it does not appear that any one heard him say anything unusual on that day or previous thereto, or saw anything unusual in his actions. The testimony is he did not appear nervous or excited. Nothing is shown indicating he had ever contemplated self-destruction, or that he wished to be out of life. He is not shown to have been of a melancholy disposition. Some time during that day he loaded the gun, but when is not known. Early in the evening he went to the house of a neighbor who seems to have been interested in gunning matters, and inquired of his wife when her husband would be home, and was told between 6 and 6:30 P. M. He returned to his own home and soon after started upstairs with his gun, as if to put it away in the store-room. Shortly after he reached the head of the stairs the gun was discharged, carrying away one side of Barker's face and the top of his head, and leaving his brains and hair on the ceiling. Barker was wearing square-toed shoes and apparently could not have fired the gun with his foot. The proof tended to show that if the muzzle had been close to his face or head, a hole would have been made in the head and that the fact that the discharge from the gun had spread out indicated the muzzle was some distance away. Apparently the length of the barrel was such that Barker could not have discharged the gun with his hand and produced that effect. No appliance was found indicating Barker had intentionally fired the gun. He may accidentally have dropped the butt of the gun upon the floor and thereby caused its discharge, or the hammer may have accidentally come in

contact with some object producing that result. It may have been a mere accident, such as has often happened from the careless handling of firearms. We find no warrant in the proofs for saying the jury ought to have found Barker committed suicide.

A legal presumption also arises in favor of plaintiff's contention that the death was an accident. No one is presumed to knowingly incur physical pain and death. (C. & E. I. R. R. Co. v. Hines, 132 Ill. 161.) Fidelity & Casualty Co. v. Weise, 182 Ill. 496, was a suit on an accident certificate or policy, where death was caused by a bullet. Under the terms of the certificate the burden was on plaintiff to prove death by external, violent and accidental means, and in that respect it differs from the case before us; but the court there said :

"The presumption of the law is that all men are sane and possessed of the love of life; are animated by the instincts of self-preservation and the natural desire to avoid personal injuries and death. * * * The plaintiff was entitled to the benefit of the presumption the assured did not take his own life. The presumption was not conclusive but rebuttable."

In Traveler's Ins. Co. v. McConkey, 127 U. S. 661, where death ensued from a pistol shot, it was held, "So strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence, that suicide can not be presumed." That court quoted with approval from Mallory v. Travelers' Ins. Co., 47 N. Y. 52, a suit upon an accident policy, where death was caused either by accident or by the suicidal act of the deceased, as follows :

"But the presumption is against the latter. It is contrary to the general conduct of mankind; it shows gross moral turpitude in a sane person."

In Mutual Life Ins. Co. v. Wiswell, 56 Kan. 765, 35 L. R. A. 258, the court said : "It seems to be fairly settled that, in the absence of satisfactory evidence as to the death being accidental or suicidal, the presumption is in favor of the theory of accidental death." (Standard Life and Acci-

dent Ins. Co. v. Thornton, 49 L. R. A. 116; Star Accident
Co. v. Sibley, 57 Ill. App. 315.)  1 May on Insurance, sec-
tion 325, states the rule thus:  " When the dead body of
the insured is found under such circumstances, and with
such injuries, that the death may have resulted from negli-
gence, accident, or suicide, the presumption is against sui-
cide, as contrary to the general conduct of mankind, a
gross moral turpitude not to be presumed in a sane person;
and whether it was from one or the other, if there is any
evidence upon the point, is for the jury."   The case, then,
clearly is such that we would not be warranted in disturb-
ing the verdict for plantiff on the facts.

In cross-examination of Mrs. Gibbs, a witness for plaint-
iff, defendant sought to draw out a conversation with Mrs.
Barker, the plaintiff, after the death, concerning her hus-
band's condition, conduct and conversation, prior to the
shooting.   The court sustained plaintiff's objection to this.
Mrs. Gibbs had not been examined in chief as to any con-
versation with Mrs. Barker.   This was not germane to the
direct examination, and the objection was properly sus-
tained.   Defendant could have called the witness as its
own if it had desired.  Before plaintiff closed, defendant,
out of order, by leave of court, called Mrs. Nelson, recorder
of the local court of defendant, and asked her as to infor-
mation obtained from Mrs. Barker, after the death, that
her husband had been in poor health for a couple of weeks
and on the day he died had told her he was afraid he was
losing his mind, etc.   Plaintiff objected and the court sus-
tained the objection, and it is urged this was error.   A few
minutes later Mrs. Barker testified in her own behalf.
Defendant in cross-examination inquired as to her husband's
condition of health and what he had said to her about being
afraid he would lose his mind, etc., and the court over-
ruled the plaintiff's objection and permitted defendant to
go into that matter.   She not only stated fully what her
husband told her on that subject, but also that she had
repeated this to Mrs. Nelson.   The court having thus
changed its ruling, defendant should have recalled Mrs.

Nelson and made the inquiry again if it desired further testimony on that line.  Apparently it had obtained from Mrs. Barker all it sought to prove from Mrs. Nelson.  All this matter was also fully proved by Chamberlin, the undertaker, on re-direct and re-cross examination.  There was no dispute that Mrs. Barker had made these statements and they were fully proved to the jury.  Defendant was not deprived of anything material.

Defendant introduced the coroner's inquisition, which found that Thomas P. Barker " came to his death by shooting himself in the head with a shotgun."  The court, at the request of plaintiff, gave the jury the following instruction :

" The court instructs the jury the verdict of the coroner's inquest over the said Thomas P. Barker is not such evidence as is conclusive, but only that it is competent to be considered together with the other testimony in the case."

It is urged this is error.  While the instruction was in the exact language of the Supreme Court in U. S. Life Ins. Co. v. Vocke, 129 Ill. 557, yet we think it should not have been given to the jury in that form.  It is never proper to tell the jury how much weight should be given to testimony.  The instruction might properly have told the jury the inquisition was not necessarily conclusive, etc., but should not have gone further.  The court, however, at the instance of defendant, gave this instruction :

" The court instructs the jury that the verdict of the coroner's jury offered in evidence in this case is competent evidence to be considered by the jury in connection with the other evidence in the case, in determining the cause of the death of Thomas P. Barker, the insured."

We think that considering both the instructions together the jury could not have been misled.  There is, however, a conclusive reason why the giving of said instruction for plaintiff can not lead to a reversal.  Defendant moved for a new trial in the court below, and filed his reasons in writing therefor.  He did not assign the giving of instructions for plaintiff among those reasons.  Where a party

moving for a new trial files points in writing specifying the grounds of his motion, he waives all existing causes for a new trial not specified in his motion, and on appeal is confined to those causes specified in the court below. (O. O. & F. R. V. R. R. Co. v. McMath, 91 Ill. 104; West Chicago St. R. R. Co. v. Krueger, 168 Ill. 586.) It is true it was held in I. C. R. R. Co. v. O'Keefe, 154 Ill. 508, that the action of the trial court in giving and refusing instructions may be reviewed without a motion for a new trial, but the Krueger case, *supra*, in effect holds that this principle does not apply if a motion for a new trial has been made and points filed omitting that subject. This is manifestly because whatever is omitted from the specified points assigned on the motion for a new trial, is thereby waived.

We find no reversible error in the record. The judgment is therefore affirmed.