648      APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

---

### Knights Templars and Masons' Life Indemnity Company v. Frank L. Crayton et al.

1. PRACTICE—*Trial Judge Alone Can Certify What Took Place on Trial.*—The trial judge alone can certify what proofs he heard, what rulings he made, and what exceptions, if any, were taken thereto.

2. SAME—*No Error to Refuse Leave to File a Demurrable Plea.*—It is not error to refuse leave to file a demurrable plea.

3. SAME—*Defendant Can Not File Additional Pleas as a Matter of Right.*—A defendant can not file additional pleas as a matter of right. An application to do so is addressed to the sound discretion of the court.

4. Same—*Waiver of Error in Refusing to Direct Verdict for Defendant at Close of Plaintiff's Case by Offering Proofs.*—Defendant waives the error of the court in refusing to direct a verdict for defendant, at close of plaintiff's case in chief, by thereafter offering proofs.

5. Appellate Court Practice—*What Question is Raised When an Instruction is Requested to Find for Defendant at the Close of All the Proofs and Denied.*—When, at the close of all the proofs, the defendant requests an instruction to find for the defendant, and such instruction is denied, the question is presented whether upon all the evidence the verdict for plaintiff is unwarranted.

6. Same—*Assignments of Error Not Argued Are Waived.*—Assignments of error not argued in this court are waived.

7. Suicide—*Presumption of Law is Against.*—There is a presumption against death by suicide, where the circumstances are such that it might have resulted from negligence, accident or suicide.

8. Evidence—*Verdict of Coroner's Jury is Competent.*—The verdict or inquisition of a coroner's jury is competent evidence.

9. Same—*Depositions Taken at Coroner's Inquest Not Competent Original Evidence.*—Depositions taken at a coroner's inquest are not competent original evidence.

10. Same—*Extent to Which Proofs of Death Are Competent Evidence.*—Proofs of death are competent evidence for plaintiff to show compliance with the requirement of proofs of death or for defendant to show that they were not such proofs of death as the policy required, but they are not competent for either party upon the question whether the cause of death was such as to charge defendants with liability or to relieve it therefrom.

11. Same—*As to Cause of Gun-shot Wound Resulting in Death.*—A physician in testifying as to the cause of death of a person should confine himself to facts and not draw any conclusions or offer his opinions upon a matter not requiring medical skill or knowledge.

12. Guardian and Ward—*Guardian Can Not Bind Wards by Admissions Made by Her in Proof of Death.*—A guardian has no authority to make even qualified admissions against the interests of her wards in proofs of death and they are not bound by them when, after arriving at their majority, they seek to enforce the policy.

13. Same—*Guardian Can Not Release Demand Due Ward Without Authority of Court.*—A guardian can not compound and release a demand due her wards without obtaining authority from the court which appointed her.

14. Instructions—*Properly Refused When Principles Are Embodied in Others Given.*—Instructions are properly refused when the principles contained in them are embodied in others given.

15. Insurance—*Clause in Policy Construed.*—The clause in a policy with reference to self-destruction, " whether voluntary or involuntary, sane or insane," has no application where the insured meets death through the accidental discharge of a gun while he is cleaning it, if he had no intention of discharging it or no intention of hitting himself.

650 APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

16. INTEREST—*Allowable on Written Contract After Money is Due.* —Interest is allowable on all moneys after they become due on any instrument in writing.

17. RELEASE—*Payment of an Undisputed Debt Not a Consideration For.*—The payment of an undisputed debt does not form a consideration for a release, and a release so obtained is void.

Assumpsit, on a beneficiary certificate. Appeal from the Circuit Court of Marshall County; the Hon. LESLIE D. PUTERBAUGH, Judge presiding. Heard in this court at the April term, 1903. Affirmed. Opinion filed October 8, 1903.

JACK, IRWIN, JACK & DANFORTH, WARD & GRAYDON and JAY H. MAGOON, attorneys for appellant.

CLARK VARNUM and L. C. McMURTRIE, attorneys for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

John Crayton died July 31, 1891, leaving a policy of insurance on his life in the Knights Templars and Masons' Indemnity Company for the benefit of his children, Frank L., Josephine M., (also called Margaret J., and now by marriage, Wilkes,) and Laura Crayton. The amount the company thereby agreed to pay the beneficiaries was " five thousand dollars, and all the money paid on the policy in assessments." The beneficiaries were minors. Their mother, Ellen C. Crayton, was thereupon appointed their guardian, and delivered to the company proofs of death within the time required by the policy. The policy provided " in case of the self-destruction of the holder of this policy, whether voluntary or involuntary, sane or insane, * * * this policy shall become null and void, and the widow and heirs or devisees of said member shall have no claim for benefits on this company; provided, that in the case of the suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees such an amount on this policy as the member shall have paid to this company on this policy in assessments on the same without interest." The company refused to pay the face of the policy on the ground that deceased committed suicide,

but offered the guardian $179, which was the sum deceased had paid the company in assessments. The guardian accepted that sum and gave a receipt therefor in full of all claims under the policy. Laura became of age February 5, 1893; Frank, August 11, 1894, and Josephine September 13, 1896. On July 30, 1901, said children began this suit against the company to recover the $5,000 named in the policy. They recovered a verdict and a judgment for $7,457.50, from which the company prosecutes this appeal.

The declaration contained a special count upon the policy and the common counts. Defendant filed eleven pleas. A demurrer was sustained to the second, fourth and fifth, and that action is not assigned for error. The first plea was non-assumpsit. The third was that deceased committed suicide. The sixth was that plaintiffs did not make claim within six months after Crayton's death, as required by the policy. The seventh was the ten years' statute of limitations. The eighth alleged the policy was obtained by Crayton by fraud and circumvention, in this, that he then intended suicide and afterward committed suicide. The ninth alleged a release by the guardian in consideration of payment of the full amount due upon the policy. The tenth was to the same effect, and further averred that each child when he or she came of age received from the guardian his or her full share of the total sum due on said policy, and had not revoked or disaffirmed the act of their guardian in releasing the policy nor returned the several sums so received by them. The eleventh plea was like the tenth. Plaintiffs filed a similiter to the first plea, and special replications to the other pleas, by which the several material matters of fact therein pleaded were denied.

Defendant assigns for error the refusal of the trial court to prohibit Clark Varnum from prosecuting this suit for plaintiffs. The bill of exceptions does not contain the petition by defendant on that subject, the affidavits heard by the court for and against that application, the order of the court, nor any exception by defendant thereto. Because of this omission the matter is not before us. The clerk has improperly set out these matters in his record. The clerk

652 Appellate Courts of Illinois.

Vol. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

can not preserve such matters of record. The trial judge alone can certify what proofs he heard, what rulings he made, and what exception, if any, was taken thereto. Further, Varnum's name was signed to the præcipe for summons and to the declaration. The alleged objections to permitting Varnum to act as attorney for plaintiffs were as well known to defendants then as afterward, and they did not make the application till more than a year after the suit was begun, and shortly before the trial, and when it was manifest to grant the application would be likely to prevent a trial at that term.

It is urged the court erred in refusing defendant leave to file four additional special pleas. Defendant had filed one set of pleas, and had then obtained leave to file, and had filed, additional pleas. Issues had been joined thereon, and thereafter, pursuant to the agreement of the parties, the court had set the cause for trial for a day certain. As the case was about to be reached for trial these four additional pleas were presented. No showing was made that the matters set up therein had been discovered since the last preceding pleas were filed. It is manifest they had not been. The additional pleas presented nothing appealing to the discretion of the court. The first and third related to the settlement with the guardian and her distribution of the money. That matter had been fully pleaded, and was treated as sufficiently pleaded at the trial. The third set up the five years' statute of limitations, which was not applicable to this contract. The fourth charged Varnum was attorney for defendant when it settled with the guardian, and was now prosecuting the case under a champertous contract. The matters set out in this plea had already been before the court on the motion to prevent Varnum from acting as attorney for plaintiffs. The proofs on that application not having been embodied in the bill of exceptions, we may well assume, in support of the refusal of leave to file this plea, that it had already appeared there was no basis for the charges set out in the plea. If, as against defendant who has caused this record to be pre-

pared, we may consider the affidavits the clerk has copied into the record, then it had already appeared that these charges were made by defendant largely upon information and belief, and that they had been rebutted by positive denials and specific statements of fact, leaving no basis for the charges of an injustice done by Varnum to defendant, and of an illegal arrangement between him and plaintiffs. The plea is in bar of the action, and certainly, even if the facts stated might authorize the court to stay the progress of the cause till it was relieved of a champertous contract, or an attorney improperly appearing, they could not discharge the debt or bar the action. It is also argued the plea, if allowed and proven, would prevent the recovery of the portion which it was averred Varnum was to receive by his contract with plaintiffs. The plea in its commencement and conclusion professes to be in bar of the whole action, and it was therefore demurrable, even if it stated a defense to one-half the cause of action. It is not error to refuse leave to file a demurrable plea. A defendant can not file additional pleas as a matter of right. An application for leave to do so is addressed to the sound judicial discretion of the court. The party complaining of its refusal must show that discretion was abused. No such showing is made here.

Various exceptions were taken during the trial to the rulings of the court upon the admission and rejection of testimony, but these exceptions are not argued in defendant's opening brief here, and they are therefore waived.

It is argued that as plaintiffs did not introduce the proofs of death they failed to make a case in chief, and therefore defendant's instruction to find for defendant, offered at the close of plaintiffs' case in chief, should have been given. But defendant thereafter offered proofs and thereby waived the error, if any, and it put the proofs of death in evidence. Defendant again requested an instruction to find for defendant at the close of all the proofs, and it was refused and defendant excepted. This presents the question whether upon all the evidence the verdict is unwarranted.

654    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

The main question is whether John Crayton committed suicide. We have read the evidence on this subject in the record itself, and have endeavored to give it careful consideration. There were circumstances proved from which the inference of suicide might be drawn. Deceased was killed by a bullet which entered near the center of his forehead and passed out near the rim of his hat on the back of his head. The shooting took place on his barn floor between eleven o'clock A. M. and noon. His body was found lying on the floor with his head to the east and with his Winchester rifle between or near his legs, pointing to the southeast. His rifle contained only an exploded shell. A pine stick lay near him, which defendant asks us to infer he used in firing the gun. Deceased had suffered from a sunstroke some years before, and since then had been moody, excitable and peculiar, and his family and neighbors doubted his sanity. During the forenoon of his death he had spoken harshly to his son about being out late at night. On the other hand, it does not appear that he had ever expressed or indicated any suicidal purpose or intent. He went to the barn about eleven o'clock that forenoon for the express purpose of cleaning his rifle. He called for certain apparatus he had for that purpose and caused his children to search the house for it. When they could not find it, he said he would go to the barn and use a wire for a ramrod, meaning in cleaning the gun. His body was found in front of and close to his work bench in the barn, in front of a window, and with the big barn doors open toward the house. Pieces of cloth and other suitable apparatus for cleaning the gun were on the bench. All the cartridges but this one were on the bench. The exploded shell in the gun bore the marks of a knife. A common jack-knife was stuck in the bench. Deceased had on his boots and could not have fired the gun with his feet. It was shown that kindling wood was often split at that place and that there were quite a number of pine sticks lying near where deceased fell, thus weakening the inference that deceased had been using the stick which defend-

ant's witness described as lying near his body. There was no discoloration by powder or by burning about the head of deceased. Experiments were made during the trial by firing cartridges of the same make and size out of the same gun at heavy card-board paper, one where the muzzle of the rifle was held close to and almost in contact with the card-board, and others at six, twelve, twenty-four and thirty-six inches distant therefrom. These papers were identified and put in evidence. Though objection was made and exception preserved by defendant, yet that exception, as already suggested, is not argued in defendant's opening brief, and it is therefore waived, and the case stands here as if that proof had been received without objection. But though the bill of exceptions recites these card-boards were admitted in evidence, they are omitted from it. In this condition of the record we think it fair to assume they tended to show that where the muzzle was near the card-board, the latter bore indications of discoloration by powder or burning, and tended to show that the muzzle of this rifle was not near the head of John Crayton when the rifle was discharged. If the muzzle was two or three feet from Crayton's head when the rifle was discharged, this might well be considered by the jury as tending to indicate the discharge was accidental and not intentional.

Deceased may have intentionally killed himself. On the other hand, he may have gone to the barn solely to clean the rifle and in his preparations to clean it, may have got together the cleaning apparatus found on the bench, and removed from the rifle the cartridges found on the bench; may have tried to remove the last cartridge and had difficulty in doing so and used the knife upon it in an unsuccessful effort to get it out and thereby made the marks found upon the exploded shell, and then stuck the knife in the bench; and may then have done something else with the rifle carelessly in an effort to loosen the remaining shell, and in so doing unintentionally discharged the gun with the fatal result. The burden of proving intentional

656    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

self-destruction was upon defendant. In our opinion the language of the policy with reference to self-destruction, " whether voluntary or involuntary, sane or insane," does not apply here if the gun was accidentally discharged while being handled by Crayton, if he had no intention of discharging it or no intention of hitting himself. We are unable to say the jury ought to have found from this evidence that the deceased committed suicide.

The action of the guardian did not release defendant from liability for the $5,000 named in the policy, for two reasons. First, she had no personal interest in the cause of action, and in her capacity as guardian she could not compound and release a demand due her wards without obtaining the authority of the court which appointed her. (Hayes v. Massachusetts Life Ins. Co., 125 Ill. 626.) That authority was not obtained in this case. Second, there was no compromise, nor did defendant pay any consideration for a release of the claim for $5,000. The policy bound defendant to pay not only $5,000, but also " all the money paid on the policy in assessments." While the policy provided that the suicide of the member should relieve defendant from the payment of the $5,000, yet it made the company liable in any event for " such an amount on this policy as the member shall have paid to this company on this policy in assessments on the same, without interest." John Crayton paid defendant $179 in assessments on this policy during his lifetime. Under the provisions of the policy, unless deceased committed suicide, defendant was liable for $5,000 and also for $179. If he did commit suicide defendant was still liable for $179. It paid the guardian $179 only, being the sum due in any event. The claim of the guardian for the $5,000 was not compromised, but simply surrendered. There was no dispute as to defendant's liability to pay the $179. The payment of that undisputed debt could not form a consideration for a release of the further claim for $5,000. The release was therefore void. (Hart v. Strong, 183 Ill. 349; Jaffray v. Davis, 11 L. R. A. 711, note.) In Tyler v. Odd Fellows

Mutual Relief Ass'n, 145 Mass. 134, this principle was applied to a similar attempt by a guardian to release all his ward's rights upon receipt of so much as was admitted to be due. No attempt was made here to again recover the $179, but it was treated by plaintiffs at the trial and by the court in its instructions as a payment *pro tanto*. About the time each plaintiff came of age the guardian paid such plaintiff his or her share of the $179 and several years afterward filed in the County Court a report of the receipt and distribution of said $179. The acts of the minors in accepting such sums from their guardian did not release defendant or constitute a ratification of the receipt in full which the guardian had given defendant. The $179 was due to the children in any event. They received and receipted only for what was due them if deceased did commit suicide. The proof shows that before they were all of age they had declared their dissatisfaction with the release of the policy, and were actively trying to find some one who would prosecute their claim, and had it at different times in the hands of different lawyers at different places. Ultimately, they caused it to be presented to an officer of defendant. Defendant has not been misled or injured by any act or omission of plaintiffs. In our judgment plaintiffs have not by their conduct released their claim to the $5,000, nor created an estoppel against its recovery.

Plaintiffs' fourth instruction said the burden of proving that John Crayton came to his death by self-destruction was upon the defendant; and the eighth was that the jury could not find that he committed self-destruction because the cause of his death was not proved, but unless the evidence showed the cause of his death was self-destruction the jury should rely upon the presumption of law against self-destruction. That there is a presumption against death by suicide, where the circumstances are such it might have resulted from negligence, accident or suicide, is shown by the authorities quoted by us at length in Supreme Court of Honor v. Barker, 96 Ill. App. 490. But it is argued these instructions were erroneous because the proofs of death fur-

658     APPELLATE COURTS OF ILLINOIS.

VOL. 110.]  Knights Templars & Masons' Life Indemnity Co. v. Crayton.

nished by the guardian showed deceased committed suicide,
and because plaintiffs are estopped by those proofs.   The
guardian stated in those proofs that the amount of the policy
was $5,000; that she was legally entitled to recover the
entire amount of the policy; that the remote cause of death
was "supposed sunstroke some two or three years ago,"
and that the immediate cause of death was "supposed sui-
cide."   This was by no means an unqualified statement that
deceased committed suicide, if the guardian could bind her
wards by such an admission.   The evidence showed there
were instructions by defendant as to the manner in which
proofs of loss should be made up, which required the cer-
tificate of the physician who attended deceased in his last
illness and also a certified copy of the verdict of the cor-
oner's jury and of the evidence on which that verdict was
based.   In attempted compliance with these requirements
the guardian attached to the proofs of death sworn answers
to a series of prepared questions by the physician who was
called after John Crayton was found dead.   In these
answers he stated that the immediate cause of death was
"gun shot through his brain, fired by himself with suicidal
intent."   She also attached the verdict of the coroner's
jury, which was that the fatal wound upon deceased was
"inflicted by himself with suicidal intent, while laboring
under a temporary fit of insanity."   Whatever may be the
rule as to the competency of these documents as evidence,
we can not conceive that these plaintiffs can be estopped by
anything contained therein.   The physician was the one
who came the nearest possible to defendant's requirements,
as he was the physician who was called after a sudden death,
where there had been no last illness.   The guardian had no
control over his views of the case or manner of answering
the stated questions.   At the time the inquest was held
plaintiffs were minors and had no guardian, and there was
no one who could represent them at the inquest.   The
objection made to these instructions we consider not well
taken.

All the papers connected with the proofs of death were

offered by defendant, and were admitted by the court, first for a limited purpose and afterward generally for all purposes. But by the tenth instruction given for plaintiff the jury were told that none of these papers, except the verdict of the coroner's jury, could be considered by them in determining the cause of John Crayton's death. This ruling presents two questions : first, were the depositions taken before the coroner's jury competent original testimony upon that subject? and second, were said depositions and the statements under oath by the guardian and by the physician made competent original testimony on that subject, by their inclusion in the proofs of loss furnished by the guardian? That the verdict or inquisition itself was competent is held in United States Life Ins. Co. v. Vocke, 129 Ill. 557; Pyle v. Pyle, 158 Ill. 289; Grand Lodge v. Wieting, 168 Ill. 408; Overtoom v. C. & E. I. R. R. Co., 181 Ill. 323. The implication in these cases is that the depositions taken before the coroner's jury are not competent. In P., C. & St. L. Ry. Co. v. McGrath, 115 Ill. 172, such depositions had been held incompetent. The Vocke case, *supra*, was a suit on a policy of life insurance. The proofs of death included a certified copy of the verdict of the coroner's jury and the depositions taken before that jury. Defendant offered the certified copy of the verdict, and it was not admitted. Then defendant offered in evidence the original papers, including the verdict and the testimony heard by the coroner's jury, and they were not admitted. It was there held the verdict or inquisition was competent and for the error in refusing to admit it the judgment was reversed and the cause remanded for another trial. It was there pointed out that in the McGrath case, *supra*, it was the depositions which were held incompetent and not the verdict of the jury. The separate opinion of Mr. Justice Baker also said the McGrath case was only authority for the proposition that the depositions were incompetent. As the Vocke case was being remanded for another trial, the court would certainly have discussed the depositions if it had not considered they were incompetent. At the second

660    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Knights Templars & Masons' Life Indemnity Co. v. Crayton.

trial of the Vocke case, the trial court admitted both the verdict and the depositions, and when that record was before the Appellate Court, under the title of Gooding v. United States Life Ins. Co., 46 Ill. App. 307, it was there announced that the Supreme Court, in its former decision, had held said depositions not competent. In the Overtoom case, *supra*, it was held that a deposition taken at a coroner's inquest may be presented to the witness at a subsequent trial, and upon his attention being properly directed to it, it may be afterward used to contradict him. No such course was attempted in this case. The depositions, therefore, were not competent as part of the proceedings before the coroner. Were they and the statements of the guardian and the physician competent because made part of the proofs of loss? In Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402, 408, where the proofs of loss were admitted in evidence for plaintiff, it was held this was serious error. In Knickerbocker Ins. Co. v. Gould, 80 Ill. 388, the statement in the Rubin case, *supra*, was modified, and it was declared the proofs of loss were competent to show plaintiff had complied with the conditions of the policy, meaning, evidently, the conditions requiring proofs of loss within a certain time and containing certain specified information; but it was there held they were not to be considered in ascertaining the amount of the damages. To the same effect is Milwaukee Ins. Co. v. Schallman, 188 Ill. 213. In Covenant Mutual Benefit Ass'n v. Hoffman, 110 Ill. 603, it seems to have been held the proofs of death were competent evidence for plaintiff for certain purposes, and their use could be controlled by instructions. In Modern Woodmen of America v. Davis, 184 Ill. 236, it was said, in a general way, that the proofs of death were competent evidence for defendant, and it was held it was error to exclude the affidavit of the physician who attended the assured in his last illness, which affidavit was a part of the proofs of death and stated the immediate cause of the death of the assured. The proofs of death there were filed by the beneficiary, and the opinion given by the physician who attended

deceased was upon a matter proper to be determined by a medical expert, namely, that deceased died from acute alcoholism.

The instruction here drawn in question does not say the proofs of death were not competent for any purpose, but only that, except the verdict of the coroner's jury, the proofs of death were not to be considered in determining the cause of John Crayton's death. What did the depositions before the coroner's jury legitimately tend to prove in behalf of defendant? When John Crayton died and these depositions were taken plaintiffs were about thirteen, sixteen and eighteen years of age. They had no guardian then. They had no control over the taking of these depositions. One of them was a witness before the coroner, but he could not bind his sisters. When a guardian was appointed for them a few weeks later, and proofs of death were furnished, defendant required a certified copy of these depositions should be sent. All the guardian can be said to have admitted by sending these depositions in compliance with defendant's requirement was that at the inquest these witnesses gave the testimony therein recited. Certainly defendant could not make those *ex parte* depositions competent testimony of the alleged facts stated therein by demanding that they be attached to the proofs of death. It was well said on this subject by Bailey, J., in United States Life Ins. Co. v. Kielgast, 26 Ill. App. 567, that "it would be carrying the doctrine of admissions to an unwarrantable length to hold that an insurance company, by requiring the insured to embody in his preliminary proofs any document which it sees fit to call for, can hold the insured to an admission, not only of the existence of the document and its terms, but also of the truth of all the statements therein contained." We think it should be added that it ought not to be held to be evidence tending to establish the truth of the statements made in such document. The rule might be very different if plaintiffs, or their guardian acting under proper authority, had voluntarily furnished these depositions with the proofs of death,

without having been required to do so by defendant. The judgment affirmed in the Kielgast case, *supra*, from which we have just quoted, is the same judgment before the Supreme Court in the Vocke case, *supra*, the title of that case having changed twice in the reports because of changes of administrators. It is worthy of note that though the Supreme Court reversed the judgment of the circuit and appellate courts because of the refusal to admit the verdict of the coroner's jury, yet with the language before it above quoted from Judge Bailey's opinion in the Appellate Court, the Supreme Court said nothing in opposition to his reasoning as applied to the competency of the depositions as testimony for defendant of the truth of the facts therein alleged. In the Gould and Schall cases, *supra*, it was held the proofs of loss could not be considered in determining the amount of the damages. Those were fire policies. Here the amount was not in controversy, but the question was whether the deceased committed suicide and thereby relieved defendant from liability for the $5,000 named in the policy. By parity of reasoning we conclude these papers were competent evidence for plaintiffs to show compliance with the requirement of proofs of death, or for defendant to show they were not such proofs of death as the policy required; but that they were not competent for either party upon the question whether the cause of death was such as to charge defendant with liability or to relieve it therefrom.

The physician certified he had been the family physician of deceased for ten years or more but had never treated him individually; that he was called after his death, and that the immediate cause of his death was "gun shot through his brain, fired by himself with suicidal intent." The question put to him was: "State the immediate cause of death." If he had answered only, "Gun shot through his brain," that would have been a medical opinion, which he was entitled to give; that that was the cause of death is shown by many witnesses and is not disputed. But the statement that deceased fired the shot and intended

to kill himself, was not a medical opinion. Whether he knew the facts we have elsewhere stated, tending to show deceased was engaged in removing the cartridges from the gun for the purpose of cleaning it, we can not know; but if he did, it was not for him to draw any conclusions, or to offer his opinions upon a matter not requiring medical skill or knowledge; he should have stated the facts, if the question had called for them.' It was held in Treat v. Merchants' Life Ass'n, 198 Ill. 431, to be proper to refuse to permit a physician to give his opinion whether a pistol wound in the head was accidentally or purposely inflicted. The answer by Dr. Reeder above quoted was the only part of his statement which bore on the question whether deceased committed suicide, and it was proper to instruct the jury to disregard it in deciding that question.

If Mrs. Crayton had been the beneficiary in the policy and had filed the proofs of death in her own behalf, and had stated, as she did in her certificate here, that the immediate cause of death was " supposed suicide," no doubt that would have been competent evidence against her, as an admission by her against interest, though as she only stated that it was so " supposed," it would have been of but little force, if, upon a fuller and calmer consideration of all the facts, she changed her mind. But we hold that she had no authority as guardian to make even that qualified admission against the interests of her wards, and that they ought not to be bound by it when, after arriving at their majority, they seek to enforce the policy. No effort was made to use it as impeaching testimony. We hold plaintiffs' tenth instruction was properly given.

Plaintiffs' eleventh instruction was that the proofs of death were only evidence of the fact that proofs of death were made to defendant, the time when they were made, the character of said proofs, and the nature and amount of the claim presented thereby. We regard this as correct, at least as applied to this case, for the reasons already stated. Plaintiffs' seventeenth, eighteenth and nineteenth instructions related to the lack of power in the guardian to release

the whole policy on the receipt, only, of the small sum admitted to be due, without the authority of the County Court first obtained, and were correct for reasons already stated. The court gave several instructions on that subject at defendant's request, fully stating the law from defendant's standpoint. The policy was a written contract, and the instruction allowing interest at five per cent per annum, in case of a verdict for plaintiffs, was therefore not subject to the objection here made to it.

Most of the principles stated in the instructions which defendant requested and the court refused, are embodied in other instructions given at defendant's request, and the others were properly refused. Several of the instructions given at defendant's request were more favorable to defendant than it was entitled to. The court gave fourteen instructions at defendant's request, fully covering all the rules of law it was entitled to have stated to the jury.

We find no reversible error in the record. The judgment is affirmed.