## SCOTT WALKER

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 14, 1890.*

1. CRIMINAL LAW — *self-defense — threats — evidence as to dangerous character of assailant.* On the trial of one upon a charge of murder, in which the homicide was attempted to be justified on the ground that the fatal shot was fired by the defendant under a reasonable and well-grounded belief that he was in actual danger of losing his life or suffering great bodily harm, evidence was introduced that the reputation of the deceased as an orderly and peaceable citizen was bad, and that he was a dangerous man, and had made previous threats against the defendant: *Held,* that this evidence was competent on the question of justification, and that all facts and circumstances which occurred at the time of the shooting were proper for the jury.

2. If a person is assaulted by another in such a way as to induce in him a reasonable and well-grounded belief that he is actually in danger

of losing his life or suffering great bodily harm, and when acting under the influence of such reasonable apprehension he takes the life of his assailant, he will be justified, whether the danger was real or only apparent.

3. In such a case, if the assailant had said or done anything indicative of an intention or purpose to shoot the defendant, or which might have induced in his mind a reasonable and well-grounded belief that he was actually in danger of losing his life or receiving great bodily harm, any such word or act would be competent evidence for the jury.

4. SAME—*evidence—opinion of witness—as to the impending danger.* On the trial of one for murder, by shooting a disorderly and dangerous man, who had made previous threats against the defendant, a witness was called by the defendant, who detailed the difficulty leading to the shooting, and stated what was said and done both by the defendant and the deceased. Defendant then asked the witness this question : "What, if anything, did you think L. (the deceased) was going to do when he put his hand to his hip pocket?" which the court refused to allow : *Held,* that the question was improper, as calling for the opinion of the witness instead of the facts, and that this was not a case of science or skill, calling for the opinions of experts.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. MILLS & INGHAM, for the plaintiff in error :

Opinion, so far as it consists of a statement of an effect produced on the mind, becomes primary evidence, and hence admissible whenever a condition of things is such that it can not be reproduced, and made palpable, in the concrete, to the jury. Wharton on Crim Ev. secs. 457-459.

Thus are admitted in evidence the opinions of experts. *Reed* v. *Hobbs,* 2 Scam. 298; *Ward* v. *Salisbury,* 12 Ill. 368.

Thus are admitted in evidence the opinions of non-experts. *Gas Co.* v. *Graham,* 35 Ill. 346; *Railroad Co.* v. *Shannon,* 43 id. 339; *Illinois R. P. Co.* v. *P. B. Association,* 38 id. 467; *Roe* v. *Taylor,* 45 id. 485; *Railroad Co.* v. *Irvin,* 27 id. 178; *Aurora* v. *Hillman,* 90 id. 61; 1 Greenleaf on Evidence, sec. 440 a; *Railroad Co.* v. *Von Horn,* 18 Ill. 258; *Railroad Co.* v. *Winslow,* 66 id. 219; *Jupitz* v. *People,* 34 id. 516; *Butler* v.

*Mehrling*, 15 id. 488; *Keithley* v. *Stafford*, 126 id. 520; *Nelson* v. *Borchenius*, 52 id. 236; *Spear* v. *Drainage Comrs.* 113 id. 632.

As to limitation on the admissibility of opinions in evidence, see *Dunlap* v. *Berry*, 4 Scam. 327; *Massure* v. *Noble*, 11 Ill. 531; *Pennsylvania Co.* v. *Conlan*, 101 id. 93; *Insurance Co.* v. *Grunert*, 112 id. 68; *Sahlinger* v. *People*, 102 id. 241; *Taylor* v. *Beck*, 13 id. 385; *Linn* v. *Sigsbee*, 67 id. 75; *Railroad Co.* v. *Railroad Co.* 67 id. 142; *Chicago* v. *McGiven*, 78 id. 349; *Menifee* v. *Higgins*, 57 id. 50; *People* v. *Lilly*, 38 Mich. 277; *Brownell* v. *People*, id. 736.

· In the line of these Michigan decisions are *State* v. *Pike*, 49 N. H. 414; *Stewart* v. *State*, 19 Ohio, 302; *Delafield* v. *Parish*, 25 N. Y. 9; *People* v. *Morrigan*, 29 Mich. 4; *Lewis* v. *State*, 49 Ala. 1; *Commonwealth* v. *Piper*, 120 Mass. 185.

Mr. GEORGE HUNT, Attorney General, for the People:

The facts necessary to be proven to sustain the defense are: First, that the circumstances were sufficient to excite the fears of a reasonable person; and second, it must appear that the party killing really acted under the influence of those fears, and not in a spirit of revenge. The opinion of the witness Buckner as to what Reynolds intended to do, could throw no light on either of these questions.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Scott Walker, the plaintiff in error, was indicted and convicted in the Criminal Court of Cook county for the murder of one Luther Reynolds. The evidence in the record shows that the accused, Scott Walker, shot and killed the deceased in a gambling house in Chicago on the 18th day of February, 1889.

It appears from the evidence, that in the forenoon of February 18, ten or eleven colored men and one white man were gambling, in the basement of a saloon on State street, in a

game called "craps." They were sitting or standing on the opposite sides of a table. The defendant and deceased were sitting opposite each other. Walker was engaged in the game, while the deceased was keeping track of the bets. A quarrel arose between the two in regard to a small sum of money. William Ransom, a witness for the People, testified that Walker said, using offensive language, "I don't want you to take my money;" that Reynolds said, in reply, "You need not mind talking that way, Scott; I have always been a friend to you; you need not mind cursing me;" that Walker said, "I don't give a damn for you;" and that Reynolds said, "I don't give a damn for you; there is more in Chicago cares for me than I do for them;" that Walker then said, "I will show you how much I care for you;" that a man named "Kentuck" thereupon said, "Keep still, Luther; that is enough; if you don't, you're going to have trouble;" that Walker then picked up his money in his right hand, put it in his pocket, and, "when he comes out, he comes out with a revolver, and he shoots. He was just at the center of the table, and he pulls the trigger, and shot Luther Reynolds." In answer to a question in reference to the position the deceased occupied, the witness testified: "When Walker said, 'I will show you how much I care for you,' Reynolds raised his hand up, explaining to him, and he placed himself back in the chair, and just as he got himself placed, and his hands on the railing of the table," he was shot. Other witnesses who were called for the People corroborate the statements of this one.

On behalf of defendant, Steve A. Buckner was called as a witness, and testified as follows: "I was sitting on north side of table. Reynolds was sitting on south side, right opposite me. Twelve or thirteen persons were present. I had charge of a game of craps. It is played with dice. Reynolds had a small stick in his hand. Scott Walker had some money on the table. He was playing there, and Calhoun Moore shoved a dime over to pay Montgomery; it gets mixed in with Scott

8—133 ILL.

Walker's money; he goes to grab for it; Scott says, 'Do you want to rob me?' Reynolds says, 'Let me explain that to you, Scott.' He says, 'I don't want you to explain anything to me.' Luther says to Scott, 'I will explain to you.' He says, 'I don't care for you to explain anything to me.' Luther says, 'I want to tell you,' and Scott says, 'I don't want you to tell me.' Luther says to him, 'Let me show you how it is.' He says, 'I don't want you to show me.' Luther says, 'I don't care anything for you, anyway.' Scott says, 'And I don't care for you;' and Luther says, 'There is more people in this town cares for me than I do for them;' and he says, 'I will show you what I care for you,' and when he says that, Scott fires.

Q. "Who was it said, 'I will show you what I care for you?'
A. "Luther.
Q. "Then what occurred?
A. "Then he gets up, this way, (indicating) and says, 'I will show you,' and throws the stick down, this way, (indicating) and says, 'I will show you what I care for you.' Walker was standing, just before the shooting, with his hands leaning on the rail of the table, after he put his money in his pocket, about a minute and a half."

The witness was then asked the following question: "What, if anything, did you think Luther was going to do when he put his hand to his hip pocket?" The court refused to allow the witness to answer the question, and the alleged erroneous decision is the only error relied upon in the argument to reverse the judgment.

It is claimed by counsel for the defendant that the question to the witness was proper, on the ground, as we understand the argument, that the answer to the question, had it been allowed, would have tended to show that the fatal shot was fired by the defendant under a reasonable and well grounded belief that he was in actual danger of losing his life or suffering great bodily harm. Evidence was introduced that the reputation of the deceased as an orderly, peaceable citizen, was bad. It was

also shown that he was a dangerous man, and had made previous threats against the defendant. · This evidence was competent for the consideration of the jury on the question of justification interposed by the defendant, and all facts and circumstances which occurred at the time of the shooting were proper for the jury. If the defendant was assaulted by the deceased in such a way as to induce in him a reasonable and well grounded belief that he was actually in danger of losing his life or suffering great bodily harm, when acting under the influence of such reasonable apprehension he was justified in defending himself, whether the danger was real or only apparent. (*Campbell* v. *The People*, 16 Ill. 18.) If the deceased had said or done anything which indicated an intention or purpose to shoot the defendant; or which might induce in his mind a reasonable and well grounded belief that he was actually in danger of losing his life or suffering great bodily harm, any such word or act would be competent evidence for the jury. But what opinion the witness Buckner may have formed as respects what the deceased was going to do, presents a different question. It was not the province of a witness who saw the transaction, to pass judgment on the facts and determine what the actions of the deceased indicated, but the witness might properly detail all the facts, and then it would be the province of the jury to say and determine what was intended.

There are cases where a witness may properly give his opinion, and that opinion may be competent evidence. On questions of science and skill, or others of a like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions. The opinions of medical men are constantly admitted as to the cause of disease or of death or the consequences of wounds. Seal engravers may be called to give their opinion upon an impression,—whether it was made from an original seal or from an impression. The opinion of an artist, in painting, is evidence of the genuineness of a picture. A ship builder may give his opinion as

to the seaworthiness of a ship, even on the facts stated by others. (1 Greenleaf, sec. 440.) There are other cases, doubtless, where the opinion of a witness may be competent evidence,—such, for example, as relate to matters which rest entirely in opinion. But we do not think that the opinion of the witness in question falls within any well recognized rule where the opinions of witnesses may be given in evidence. Before the defendant could be justified in firing the shot which caused the death of Reynolds, it must appear that the circumstances were sufficient to excite the fear of a reasonably prudent person, and that defendant acted under the influence of such fear. What the witness Buckner may have thought on the question had no bearing whatever. The circumstances must be proven to the jury, and whether they were sufficient was a question solely for their determination. If it was a fact that the deceased was reaching for his revolver when he was shot, the proof of that fact could be fully comprehended by the jury, and what the witness may have thought would add no force to the fact, if established by evidence.

We think the decision of the court on the admission of the evidence was correct, and the judgment will be affirmed.

*Judgment affirmed.*