HARRY W. TREAT et al.

v.

THE MERCHANTS' LIFE ASSOCIATION.

| 198 | 431 |
| 208 | ⁶614 |
| 110a | ⁶663 |
| 198 | 431 |
| 111a | ⁴205 |

*Opinion filed October 25, 1902.*

1. APPEALS AND ERRORS—*Appellate Court has no power to find facts in all cases.* Section 88 of the Practice act does not authorize the Appellate Court to make a finding of facts in its judgment unless it finds the facts, in whole or in part, different from the trial court.

2. SAME—*when Appellate Court has no power to make finding of facts.* If the trial court directs a verdict for the plaintiff after hearing the evidence for the defendant alone, upon the ground that, as a matter of law, no defense had been established under the stipulation entered into by the parties, the Appellate Court is not authorized to treat the question of law passed upon by the trial court as one of fact, and by making a finding of fact reverse the judgment without remanding the cause for new trial.

3. TRIAL—*what sufficient to go to jury on question of suicide.* Evidence that the insured was found dead in his barn, shot in the head by a bullet from a revolver belonging to him and found near by, and that he was insolvent and heavily insured, is sufficient to go to the jury upon the question of suicide.

4. INSURANCE—*when conditions of application are binding upon beneficiaries.* If the application for insurance is referred to in the policy and made a part of the contract it must be read into the contract of insurance, and its conditions are binding upon the beneficiaries named in the policy.

5. EVIDENCE—*when evidence is incompetent as hearsay.* In an action on an insurance policy it is proper to permit the witness who found the deceased's revolver to state that the latter's daughter told him where to find it, but it is not competent to prove by him her statements as to how the revolver came to be there.

6. SAME—*what not competent in action on an insurance policy.* In an action on a policy on the life of one who was found dead with a bullet wound in his head, it is proper to refuse to permit a physi-

cian to express an opinion whether the wound was accidentally or purposely inflicted; neither is it competent to prove that there was no hue and cry after the death of the insured, nor any attempt to apprehend his supposed murderer.

7. SAME—*when alleged statement of the insured to agent is admissible.* In an action on a life policy, where it is claimed the insured committed suicide, the agent who took the application may testify that the insured asked him if his company paid losses on suicides, and that when told that it did not, made some remark about canceling the application.

*Merchants' Life Ass.* v. *Treat,* 98 Ill. App. 59, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action of assumpsit, brought by the appellants in the superior court of Cook county, to recover upon an insurance policy for $5000 issued by the appellee upon the life of Robert A. Helliwell in their favor, as co-partners of said Helliwell. The declaration consists of two special and the appropriate common counts, to which was interposed a plea of the general issue, and it was stipulated that the plaintiffs might introduce under the declaration filed any evidence which could be properly introduced under a declaration properly drawn, and that the defendant might introduce under the general issue any defense which it could introduce were such defense properly pleaded; also, that the plaintiffs, without the introduction of any evidence, were entitled to a verdict for $6174.50, and that it devolved upon the defendant to prove any sufficient defense, in whole or in part, to avoid such verdict.

The defendant was given the open and close, and the plaintiffs introduced no evidence, but at the close of the defendant's evidence moved the court to instruct the jury to return a verdict in their favor for the amount stated to be due them in said stipulation, unless a sufficient defense was established. The court allowed said motion

and instructed the jury to return a verdict in favor of the plaintiffs for $6174.50, and rendered judgment thereon, and the defendant perfected an appeal to the Appellate Court for the First District, which court reversed said judgment without remanding the cause, and made a special finding of fact, as follows: "The court * * * finds that the insurance contract upon which this suit was brought contains the provision that no action at law or suit in equity shall be maintained or recovery had on the policy issued unless such action or suit be commenced within one year from the date of the death of the assured, and that this suit was not commenced until after the expiration of more than one year after the death of the assured."

The evidence tended to show that on the 14th day of August, 1895, deceased made application for the policy in suit at the office of Helliwell, Treat & Co., in the Stock Exchange Building, in Chicago, to one Stelling, agent of appellee; that the policy was delivered to Helliwell on August 16, 1895. The application showed that Helliwell already had $33,000 life insurance. The assured was found dead in the barn in the rear of his house at Oak Park, Illinois, on the evening of December 14, 1895. Assured came to his death by a pistol bullet from a 32-calibre pistol. The bullet entered on the right side of his head, penetrating a little above the level of the eyes and in the hair. There were powder-marks under the skin around the wound. The shot entered on a line at right angles with the side of the head. The first witness who saw deceased after death was Edward W. Cross. Afterwards Cross found a 32-calibre Smith & Wesson pistol behind some cases some ten feet from the body, the place having been pointed out to him by the daughter of the deceased. The pistol belonged to deceased. It had been freshly discharged. Helliwell was insolvent, and there were unsatisfied judgments against him in Cook county for a considerable amount.

By the application Helliwell agreed that the policy should be void (save as to share in actual reserve) in the event "I commit suicide, whether sane or insane," and "I also agree that no action of law or suit in equity shall be maintained or recovery had on said policy * * * unless such action or suit be commenced within one year from the date of my death." The application was referred to in the policy and expressly made part of the contract of insurance. Suit was filed in the superior court of Cook county on August 6, 1897, more than one year after the death of the assured.

JOHN S. COOPER, for appellants.

FRANK P. BLAIR, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the Appellate Court erred in its finding of fact, and in reversing the case without remanding the same to the superior court for a new trial. The Appellate Court, under section 88 of the Practice act, (3 Starr & Cur. Stat.—2d ed.—chap. 110, p. 3114,) has no power to make a finding of fact unless it finds the facts, in whole or in part, different from the finding of the trial court. (*Gammon* v. *Huse,* 100 Ill. 234.) In this case the trial court heard only the evidence of the defendant, and, on the motion of the plaintiffs based upon that evidence, held, as a matter of law, that no defense, under the stipulation entered into by the parties, had been established, and directed a verdict in favor of the plaintiffs. The Appellate Court, under the statute, was not authorized to treat the question of law thus raised and passed upon by the trial court as one of fact, and, by making a finding of fact, reverse the cause without remanding the same for a new trial. The action of the Appellate Court in making such finding of fact, and in reversing the cause without remanding the same for a new trial, was therefore erroneous.

It is next contended that the Appellate Court erred in holding that the trial court should have submitted the question of fact as to whether the deceased came to his death by suicide, to the jury. The evidence in this record fairly tends to establish the fact that the deceased came to his death by his own hand. He was found dead in his barn, near his house. His death was caused by a shot in the head which had been discharged from a revolver belonging to him, and which, at the time of its discharge, was held close to his head. The revolver was found near the body, behind or between some boxes or cases, where it was pointed out by a daughter of the deceased. He had a large amount of insurance upon his life and was insolvent. We think the evidence was sufficiently strong to entitle the defendant to have had the issue of suicide submitted to the jury, and that the trial court erred in instructing the jury peremptorily to find for the plaintiffs.

It is further contended that the agreements on the part of the deceased, contained in the application for the insurance, that no recovery should be had in the event "I commit suicide, whether sane or insane," and "I also agree that no action of law or suit in equity shall be maintained or recovery had on said policy * * * unless such action or suit be commenced within one year from the date of my death," were not binding on the beneficiaries. The application for the insurance is referred to in the insurance contract and made a part thereof, and under the repeated decisions of this and other courts it is binding upon the beneficiaries named in the policy. Where the intent to make the application a part of the policy clearly appears, the court, no matter what the phraseology may be, will read the application into the contract of insurance and construe the contract of insurance and the application together. *Supreme Council of Royal Templars of Temperance* v. *Curd*, 111 Ill. 284; *Commercial Mutual Accident Co.* v. *Bates*, 176 id. 194.

It is also contended that the trial court erred in refusing to allow Cross to testify to what the daughter of Helliwell said to him at the time she told him where the revolver would be found. The court permitted Cross to state that she told him where he would find the revolver, but he was not permitted to testify to the remainder of her conversation. Cross was called by the defendant, and what the daughter stated to him was hearsay evidence and clearly incompetent. If the defendant desired to prove what the daughter knew about the revolver being placed in the position where it was found it should have called her as a witness. Her knowledge as to how the revolver came to be in the place where it was found by him could not be proven by her statements to Cross.

The court did not err in refusing to permit Dr. Mathews to express an opinion as to whether the wound was accidentally or purposely inflicted. That was a question for the jury to pass upon after they had been put in possession of the facts surrounding the death of Helliwell. Neither was it competent to prove that no hue and cry was raised after the death of Helliwell, or an attempt made to apprehend his supposed murderer.

The court also refused to permit Stelling, the agent who took the application, to testify that the assured, immediately after signing the application and before the policy was delivered, followed him out into the hall of the Chicago Stock Exchange Building and there asked him if his company paid losses on suicides, and on learning it did not, made some remark about canceling the application. We think this evidence was admissible. It tended to show that the insured had in his mind the question of suicide at the time he took out the insurance, and should have been admitted as bearing upon the question whether or not he took his own life.

The judgments of the Appellate and superior courts will be reversed and the case remanded to the superior court for a new trial.     *Reversed and remanded.*