## Violet Stone Ryerson, Appellee, v. Bankers' Life Association, Appellant.

### Gen. No. 18,696.

EVIDENCE, § 435*—*when physician cannot give opinion whether death was suicidal or accidental.* On an issue in an action on a life insurance policy whether a man's body going over a' railing around a court of a high building was an act of suicide or resulted from an attack of vertigo or dizziness, a hypothetical question to a physician assumed some facts pertaining wholly to social relations and mental characteristics and also other facts referring mainly to physical conditions and called for an opinion as to relation between dizziness and deceased's going over the railing on the building. The witness gave an opinion that deceased would have had an attack of dizziness which would lead him to go over the railing. *Held,* the question called for a medical opinion upon matters not of skill in the profession and invaded the province of the jury and both question and answer are incompetent.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and remanded. Opinion filed November 4, 1913. Rehearing denied November 18, 1913.

I. M. EARLE and O. S. BAYLIES, for appellant.

SHEPARD, McCORMICK & THOMASON and ROSE, SYMMES & KIRKLAND, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This was an action upon an insurance policy issued by defendant on the life of John Ryerson who came to his death from a fall from the thirteenth to the ground floor of the Chamber of Commerce building, Chicago. The defendant relied upon evidence tending to show suicide, and plaintiff, in rebuttal, offered evidence tending to show that the fall resulted from an

attack of vertigo or dizziness.    This appeal is from a verdict and judgment in plaintiff's favor.

Said building was so constructed that there was a large opening or court, approximately 125x50 feet, extending from the main floor to the roof, and on each. floor around it was a railing three feet eight inches in height with a brass rail on top and iron grill work beneath.    Said Ryerson was five feet seven and one-half inches tall.    His body went over the top of the railing and to controvert the inference of suicidal intent, plaintiff introduced testimony tending to show that there was no motive for suicide, and that the deceased was subject to attacks of dizziness, which his physician, Dr. George Fiske, testified were due in his opinion to an affection of the semicircular canals in the inner ear, by which one is supposed, as he stated, to maintain his equilibrium.    Thereupon a hypothetical question was put to him embracing in its assumed facts both the matters relied on to rebut a motive for suicide and those relied on to show a fall from vertigo.

The principal and only question we deem it necessary to consider is whether the court erred in overruling defendant's objections to the hypothetical question and in refusing to strike out the answer thereto.

It assumed a hypothetical man of the age and height of the deceased, a history like his as to the character of his acquaintances, associations and business, in a good state of health, of a cheerful disposition, religious nature, tenacity of purpose, normal conduct on the day of his death, with pleasant family relations, hopeful business and financial prospects, freedom from worry, apparent absence of occasion for it; that there was nothing in his actions to indicate to any one that he contemplated suicide on the day of his death, and that he had been known to visit the building, where his death occurred, on previous occasions.

Thus far the facts assumed pertained wholly to social relations and mental characteristics.    The other

matters assumed had reference mainly to physical conditions, and were as follows: That the person had a ruptured ear drum when a boy, from which there was a discharge at times and for which he received treatment; that he complained of dizziness when playing tennis and at other times; that once while out with friends, riding through fields and over fences, he was seen to "sway or reel and fall from his horse," without seeming to know that he had fallen; that immediately prior to and at the time of the occurrence in question, one walking out of an office in the Chamber of Commerce building, when within ten feet of the court and railing above described, near a post which obstructed his view of the body of the hypothetical person except his hands and a portion of his right arm, heard "a gasp like a quick expelling of breath" and immediately thereafter saw "two hands extended on the railing  *  *  *  toward the west"  *  *  *  and the person go over the railing to the southwest, with head turned to the southwest, to the floor one hundred and twenty-five feet below at a point twenty-five feet south and fifteen feet west of where the body started,—all of which happening so quickly that the observer could not positively state but thought that the body did not touch the railing.

The question concluded as follows: "Have you an opinion, Dr. Fiske, based upon a reasonable degree of certainty as to whether there is any relation between the dizziness or vertigo that this man had suffered from and his going over that railing?"

Among specific objections made to it, were that it was not a proper question for an expert, and called for conclusions that usurped the functions of the jury. They were overruled and the answer was "I have." The witness was then asked, "What is your opinion?" to which the same objections were reiterated and overruled, and the witness answered, "My opinion is that such a person *would* have had an attack of dizziness

which *would* lead him to go over this railing.'' A motion to strike out the answer was overruled and exceptions to the several rulings were duly preserved.

As tending to state a ground for such opinion, the witness testifying later to the nature of dizziness said it may produce the feeling that objects are moving around, from or towards the person affected, or that he is moving around, up or down, or toward or from the objects, and that such person ''might then try to hold something to save himself,'' depending which way things or the person seemed to move, and that ''the attempt to grab something might be done with some considerable force.''

It is manifest that the supposed facts in the question, which related to social relations and mental characteristics, called for no science or skill, and were not the subject of expert testimony. It could not reasonably be asserted that they bore any relation to the subject of vertigo or tended to aid in the forming of a medical opinion thereon. They took up the greater part of the question (which covers five closely printed pages of the abstract) and rendered the question obviously vulnerable to the objection, that it was not a question for an expert. The contention that the objection was not sufficiently specific for the consideration of the court, we do not regard well taken.

Aside from what we above refer to as physical conditions, namely, those relating to a previous disposition to dizziness, and possibly (though we do not so decide) the position of the body as seen just before and as it went over the railing, the question embraced nothing that pertained to medical knowledge or skill, or upon which a medical opinion as to vertigo or its effects could be based. It therefore called for a medical opinion upon matters not of skill in the profession, which is inadmissible. Lawson on Expert and Opinion Evidence (2d Ed.) pp. 146-160. It is manifest that it involved excluding the theory of suicide,

and to reach a conclusion upon that subject required consideration of the supposed facts not relating to science or skill. The whole question was tantamount to a request for an opinion on the subject of suicidal intent as well as vertigo, and the answer given clearly indicates that it was so understood.

It has been frequently held that it is not competent for a witness to testify to another's intention; that it must be left to the jury to decide from evidence of acts or declarations or both. *Cihak v. Klekr*, 117 Ill. 643; *Walker v. People*, 133 Ill. 110; *Treat v. Merchants' Life Ass'n*, 198 Ill. 431; 17 Cyc. 45-48. In the cases referred to the ruling did not arise upon a hypothetical question, and for that reason and because, as has been said, a hypothetical question leaves the jury entirely free to determine for themselves the truth or falsity of the facts assumed for the purpose of framing the question (*Economy Light & Power Co. v. Sheridan*, 200 Ill. 439), appellee does not deem the cases pertinent. We are also cited to the case of *Goddard v. Enzler*, 222 Ill. 462, where the objection made to a hypothetical question propounded to an expert was that it usurped the functions of the jury, and it was said: "The functions of the jury are not usurped by an expert witness who gives an opinion upon some assumed state of facts which the evidence tends to prove," but, it will be observed, the Court added, "where it requires some special knowledge or skill in order to reach the proper conclusion from that state of facts." In our opinion where a question wrongfully calls for an expert opinion on facts not calling for science and skill, and a conclusion that, but for the form of the question would be the ultimate fact the jury are required to find, the answer is none the less an invasion of the province of the jury. In such a case the question would accomplish indirectly what it could not do directly.

The inference that deceased might have had an

attack of dizziness at any time because of his previous attacks could be as easily drawn by the jury as an expert; and while we are not prepared to say that they might not also from the facts in the case determine as well as an expert whether deceased might not have been attacked with dizziness at the time of the occurrence, we do not hesitate to say that there was nothing in the premises of the question which would warrant the unequivocal opinion that the hypothetical person *"would* have had an attack of dizziness". at that precise time, or that it *"would* lead him to go over this railing." The hypothetical form of the question did not relieve it from a plain attempt to invade the province of the jury; and such conclusion could not possibly have been reached except by excluding the theory of suicide, and thus deciding the question of intent for the jury. In other words, the answer was based in part, if not wholly, upon the assumption of facts calculated to negative the idea of suicidal intent.

Nor is this a case, as contended by appellee, for the application of the doctrine in the *Didier* case. (*City of Chicago v. Didier*, 227 Ill. 571.) The ultimate fact here was a question in dispute, namely, whether the death was suicidal or accidental, and the jury should have been permitted to reach their conclusion thereon without the aid of an expert opinion based on matters from which they were as competent to decide as the witness. They knew a dizzy person might fall, and that one getting far enough over the railing would fall. Their common knowledge of affairs and every day experience made them acquainted with the results of muscular force, and what would be required to lift a man of Ryerson's height over such a railing. None of these matters called for science or skill, and too, we think the jury were quite competent to determine whether, from the meager facts furnished by the only observer of the occurrence, there were any visual indi-

cations of vertigo at the time of the fall. It is very plain that both the question and answer were incompetent.

In view of our conclusions, we need not consider whether or not there was any abuse of discretion on the part of the court in not permitting defendant to file an additional plea, as the motion may now be renewed without meeting the same objections to it.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*