## Louise C. Greenacre, Appellee, v. Aurora Brewing Company et al., Appellants.

### Gen. No. 6,187.

1. INTOXICATING LIQUORS, § 209*—*when declarations as to intention to commit suicide inadmissible in action by wife for loss of support.* Declarations made by one who is killed by a train as the result of his lying on the track while intoxicated previous to his death, as to his intention to commit suicide and to throw himself in front of a train, must be regarded as hearsay and inadmissible, in evidence in an action under the Dramshop Act, sec. 9 (J. & A. ¶ 4609), by a wife for damages for loss to her means of support

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

caused by the intoxication of her husband and his consequent death, when unaccompanied by some attempt at the time to carry them into execution.

2. INTOXICATING LIQUORS, § 225*—*when evidence shows intoxication at time of death.* In an action under the Dramshop Act, sec. 9 (J. & A. ¶ 4609), by a wife for damages for loss to her means of support as the result of the intoxication and resulting death of her husband by a railroad train, evidence *held* sufficient to sustain a finding that deceased was so intoxicated at the time of his death as to be unable to take care of himself.

3. APPEAL AND ERROR, § 1542*—*when instruction on amount of recovery not reversibly erroneous.* Any error in giving an improper instruction on the measure of damages is harmless where there is no claim, and no ground for claim, that the damages are excessive.

NIEHAUS, J., dissenting.

Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed February 8, 1916.

ALSCHULER, PUTNAM & JAMES, for appellants.

JOHN M. RAYMOND and JOHN K. NEWHALL, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

This is an appeal from a judgment of $3,063.75 rendered on a verdict of $3,000, with interest added to date of judgment, in a suit brought by appellee against two saloon keepers and the Aurora Brewing Company, the owner of one of the saloon buildings, under section 9 of our Dramshop Act (J. & A. ¶ 4609), for loss of means of support caused by the intoxication of her husband and his consequent death.

Frank Greenacre, the husband, was about forty-five years of age, with an earning capacity of about $1,500 a year, residing with his family in the Village of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Hinckley, Illinois.   There was a curve in the railroad track running through the village so that at that point an object on the track could not be seen a great distance.   Saturday, November 15, 1913, a fast train was passing through the village at 11:30 p. m.   Greenacre was lying on the track with his head on one rail and his feet extending to or on the other rail, and was struck by the train and instantly killed.   He had been on the track less than an hour.   Another train had passed over the track about fifty minutes before.   The theory of appellee is that Greenacre was so intoxicated as to be unable to take care of himself and for that reason was in this place of danger.   Appellants claim that he was not so intoxicated as to render him incapable, but that he deliberately took that way to commit suicide.   Appellants, on the trial, offered proof by several witnesses of declarations of the deceased at various times before his death showing an intention to take his own life.   The witnesses were produced in court and testified out of the presence of the jury for the purpose of advising the court just what their evidence would be.   One said that he met Greenacre in the latter part of August, 1913, and he then made a statement indicating an intention to take his own life; and that he met him again on the day he was killed between twelve and one o'clock and deceased told him he was tired of the game and the witness would never see him again.   Another testified that he and deceased were acquainted with a man who had committed suicide by jumping in the river about two years before, and several times in talking about the matter, Greenacre told the witness that he would never commit suicide by jumping in the river but when he got ready to go he would throw himself in front of the fast train; that two weeks before Greenacre's death the witness met him in town after eleven o'clock at night and Greenacre asked him to have a drink with him saying it would probably be the last

drink they would have together, and just then the limited train went through the town (the one that afterwards struck deceased) and Greenacre said that train is apt to hit me any night; that many times within six months of Greenacre's death when the witnesses were working for him, as they stepped across the railroad track, Greenacre had said: "Right there is where I would like to jump in front of the fast train." Two other witnesses testified to sitting one evening in the latter part of August with Greenacre near the railroad track and talking about lights on the track, and Greenacre mentioned the curve of the track where the light did not show, and said if anybody was on the track the engineer would not see him until the train was right on him, and that was the place where deceased was afterwards killed. Another witness said he helped Greenacre load stock the Sunday evening before he was killed and Greenacre told him that was the last load he was going to ship. The court permitted none of this testimony to go to the jury and the record properly presents the question here whether any of it was competent. Counsel devote the larger part of their briefs to this question, and we will first consider it. If the court erred in excluding this testimony it was certainly reversible error.

Counsel for appellants do not claim, and we see no ground for any assumption, that these declarations were a part of the *res gestæ,* or that they were accompanied by some attempt at the time they were made to carry them into execution. But appellants' counsel cite and review a number of authorities holding such declarations competent, notwithstanding they are not a part of the *res gestæ.* The question has usually arisen in homicide cases and in actions on life and accident insurance policies. It was carefully considered by our Supreme Court in the homicide case of *Siebert v. People,* 143 Ill. 571, the leading authorities were discussed

and reviewed, and the conclusion reached that such declarations not accompanied by an act of the deceased that they might explain, were hearsay and not admissible. The court relied on *Commonwealth v. Felch*, 132 Mass. 22, among other authorities, in support of its conclusion, and expressly refused to follow the Supreme Court of Massachusetts in overruling that case in the later case of *Commonwealth v. Trefethen*, 157 Mass. 185. The latter case is well said by appellants' counsel to be the greatest case on the subject. It is said by the author of the notes in 24 L. R. A. 235, to be a notable case on the subject of evidence of declarations of intention when not a part of the *res gestæ*. It, however, loses its value as authority in this State because the Supreme Court in *Siebert v. People, supra,* on page 588, speaking of the case, said: "This decision, although rendered by a court of high standing, we do not regard in harmony with the current of authority, and we are not inclined to follow it. If a declaration of that character was accompanied with any act tending to show an intent to commit suicide, it might be admissible in connection with the act."

The *Siebert* case, *supra,* was cited and approved on this point in *Howard v. People*, 185 Ill. 552, and *Clark v. People*, 224 Ill. 554. It was cited and its doctrine approved in *Nordgren v. People*, 211 Ill. 425, but the rule is there said to be limited to cases where the declarations offered in evidence are not a part of the *res gestæ*, or accompanied by any act of the deceased which they might characterize or explain, but are mere naked declarations offered as original evidence. In that case it appeared that the deceased kept in her room bottles and flasks of whisky and strychnine poison, and as explanatory of those acts she made declarations showing an intent to commit suicide, which were held competent and part of the *res gestæ*, not as original evidence but as explanatory of the acts in question. It is said in 21 Cyc. 902, that such declarations

are admissible in homicide cases, but in a note the author cites *Siebert v. People, supra,* and *State v. Fitzgerald,* 130 Mo. 407, and says that such declarations are held not competent in Illinois and Missouri if not accompanied by some attempt at the time to carry them into execution, or when not made a part of the *res gestæ,* or admissible as dying declarations.

The authorities are quite fully reviewed in *State v. Fitzgerald, supra,* among them *Mutual Life Ins. Co. v. Hillmon,* 145 U. S. 285, which is much relied on by appellants here. The Missouri court concluded that a different rule does and should prevail in actions on life insurance policies; that under such contracts the admissions or statements by either party with respect to the subject-matter of controversy may be shown by the adverse party; that the difference between the two classes of cases in this respect is "broad as a gulf." Apparently our Supreme Court has recognized a distinction between the two classes of cases, for in *Treat v. Merchants' Life Ass'n,* 198 Ill. 431, the court, without referring to the holdings in the homicide cases, held that in an action on a life insurance policy where it is claimed the insured committed suicide, the testimony of the agent who took the application for insurance that before the policy was delivered the insured asked him if his company paid losses on suicides, and on learning it did not made some remark about canceling his application, was admissible as tending to show that the insured had in his mind the question of suicide at the time he took out the insurance, and bearing on the question whether or not he took his own life. In actions on life insurance policies the plaintiff is claiming under a contract of the deceased. Perhaps for that reason the rule is different from that in homicide cases, but whatever may be the reason for the distinction, it seems quite clear that the rule applied in life insurance cases should not govern in homicide cases, and that it would seem that the rule of evidence

applicable to homicide cases should be applied to this character of a case under the Dramshop Act. There is certainly no privity of contract here between the deceased and the plaintiff in the action. We are of the opinion that the trial court did not err in its ruling on the offered evidence.

Appellants argue that the evidence does not sustain the finding that deceased was so intoxicated at the time in question as to render him incapable of taking care of himself. There was a sharp conflict in the evidence on that question. It was for the jury to decide under the direction and control of the trial judge. The verdict was not so manifestly against the weight of the evidence as to authorize us to disturb it.

A number of questions arising on the introduction of evidence and manner of examining witnesses, and remarks of counsel, are presented and argued by appellants. None of them seem to us of controlling importance. Some slight errors were committed as must always happen in a bitterly contested case of this character. We reach the same conclusion in considering error assigned on giving and refusing instructions. The court gave over twenty instructions at the instance of defendants in which the law was as favorably stated as they should ask. There is some ground of complaint as to one of plaintiff's instructions on the evidence to be considered in assessing damages, but there is no claim, and no ground for assuming that the damages are excessive.

There is no question but that deceased drank intoxicating liquor at the two appellants' saloons on the day of his death, or that the brewing company owned one of the buildings and rented it for saloon purposes. We are of the opinion that no reversible error was committed on the trial, therefore the judgment is affirmed.

*Affirmed.*

Mr. Justice Niehaus.—I do not concur in this opinion.