DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1907.

---

### James H. Eckels, et al., Receivers, v. Israel Cooper.

#### Gen. No. 13,360.

1. VERDICT—*when not disturbed as against the evidence.* A verdict will not be disturbed on review as against the weight of the evidence unless the Appellate Court is impelled by the record to the conclusion that the finding of the jury is clearly contrary to the weight of the testimony or the result of prejudice, passion or improper conduct on their part.

2. VERDICT—*when not disturbed as excessive.* The admeasurement of damages is primarily the burden of the jury, and unless it is apparent from the record touching that question that the damages assessed are out of due proportion to the injury and the loss resulting proximately therefrom, such assessment will not be disturbed on review.

3. HYPOTHETICAL QUESTION—*when properly framed. Held,* under the authority of City of Chicago v. Didier, 131 Ill. App., 406, that the hypothetical question and answer thereto complained of in this case were proper.

4. INSTRUCTIONS—*must not give undue prominence to particular issue.* An instruction is properly refused which gives undue prominence to a particular issue in the cause.

5. INSTRUCTIONS—*ultimate test of soundness of.* The ultimate test of the soundness of instructions is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions.

60

Eckels v. Cooper.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed October 3, 1907.

JOHN A. ROSE AND ALBERT M. CROSS, for appellants; W. W. GURLEY, of counsel.

F. H. TRUDE AND J. K. McMAHON, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a judgment of $1,750 rendered on the verdict of a jury assessing that sum as damages for a personal injury suffered by appellee, as he claims, as the result of the negligent conduct and management of a street car propelled by electricity owned by the Chicago Union Traction Company and operated by the appellants as receivers.

The parties will be referred to in this opinion by their titular designation in the court below.

The plaintiff was on September 26, 1904, driving a horse harnessed to a grocery wagon, in the latter of which he was seated, across the tracks of defendant laid upon the roadway of Halstead street, at its point of intersection with Mather street, in a westerly direction, when a car going north along the east track collided with plaintiff's vehicle, throwing him from the position in the wagon which he occupied in driving, to and upon the ground, injuring him by putting his elbow out of joint, injuring his head and right hip, cutting his right eye and left ear, and other minor contusions suffered as a result of the collision. All of these injuries it is insisted were caused by the negligent conduct of the servant of defendant in the management and operation of the car, and that at the time of the infliction of these injuries plaintiff was in the exercise of due care for his own safety.

Plaintiff's case as to the manner of the happening of the accident rests on his own testimony and that of the three

boys, Percey Cohen, Abe Israelsky and Leonard Cohen, and the defense was supported by the evidence of James Telford, the conductor on the car, and John M. Hardell, the motorman operating the car at the time of the collision. One medical man on each side testified as to the injuries plaintiff claimed were inflicted by and imputable to the accident.

Defendant assigns and argues that there are errors in the record arising from giving the second instruction tendered by plaintiff, and in refusing to give the third instruction proffered by defendant, in the rulings of the court in the admission and rejection of evidence, and that the verdict is contrary to the weight of the evidence.

We have studied the evidence in this record, and while it is in some respects conflicting, the proof of plaintiff if uncontradicted is abundantly sufficient to support the verdict of the jury, and while it is our duty, where the evidence on which the right to recover is doubtful, to closely scrutinize the rulings of the trial judge in the admission and rejection of evidence, and where material inaccuracies are found affecting the merits of the plaintiff's cause, which might have prejudiced the defendant to its detriment, it is the duty of the reviewing court to reverse, yet we are unable to find any rulings on the evidence in this record justifying us in applying this rule.

It is the duty of the jury to reconcile the conflicts in the evidence and to judge of the credibility of the several witnesses and to give credit where they believe it to be due. The weight of the evidence is primarily for the jury. Their advantages are superior to those of the court on appeal; they see the witnesses and we do not. They are consequently the better able to judge, from their manner and appearance upon the witness stand, their bias or prejudice, if any is developed by the testimony, and their interest or lack of it in the result of the suit or the parties litigant, on which side of the controversy the greater weight of the evidence is. Appellant insists that the three witnesses supporting plaintiff were boys of immature years, that their testimony was unreliable and not worthy of credit. Appellant

says these boys are all of the same nationality and then re-
fers to them as "Hebrews" and "Jews." While they may
be of the same nationality, there is no proof in the record
that they are, and neither does it follow because they are
Jews that they are of the same nationality; but if they are
Jews that would indicate that they are of the same religious
faith. From their testimony we draw the conclusion that
they were born in this country. If this conclusion is cor-
rect, then they had the advantage of that education which
our free public schools afford to all the children of the Re-
public, regardless of their religious belief or the country of
their ancestral forbears. Appellant urges that the story of
these boys told upon the witness stand was the result of
coaching and rehearsing, and says that "a child has a good
memory and will repeat what it has been taught." We
might with as good logic paraphrase it by saying "that a
child, especially a bright child, not only has a good memory
and will repeat all it is taught, but that it will remember and
recite incidents it has seen which are calculated to make
a lasting impression upon its mind." It is not at all
anomalous to us that the incidents attending the accident in
controversy made more of an impression upon the immature
minds of these boys that a like occurrence would be apt to
make upon one of mature years. Their youthful minds had
not become calloused to the tragic incidents attending injuries
to persons and loss of life daily occurring in the thorough-
fares of Chicago, too often as the result of negligent opera-
tion and management of the traffic of this great city. The
jury saw these boys, observed their immaturity, their alert-
ness or dullness, whichever their appearance or manner de-
veloped, their apparent fairness and honesty, their effort
to be fair and truthful, and from all these conditions, ob-
vious to them but not to us, were able to judge of the credi-
bility of the boys and the weight to be accorded their testi-
mony. They also heard and observed the witnesses of the
defendant and could equally determine the reliability of
their evidence and the weight which ought to be given to it.
To the conclusions of the jury, acquiesced in by the trial

judge, we ought to add our adherence, unless we are impelled by the record to the conclusion that the finding of the jury is clearly contrary to the weight of the evidence or the result of prejudice, passion, or improper conduct on their part.

Counsel for defendant say in their brief about their own witness, that "the recollection of the conductor seemed to be somewhat hazy in this matter." The jury may not only have coincided in this view as affecting the conductor, but equally as relevant and applicable to their other witness, the motorman. They may, as they probably did, have regarded the recollection and the testimony of plaintiff and his witnesses as clear and relieved from any just aspersion of being "hazy," at least their verdict would seem to so indicate.

The admeasurement of damages is primarily the burden of the jury, and unless it is apparent from the record touching that question that the damages assessed are out of due proportion to the injury and the loss resulting proximately therefrom, such assessment will not be disturbed upon review. Plaintiff being entitled to recover damages, we are not able to say that the jury's estimate of them as indicated by their verdict was more than fairly compensatory, nor do we feel warranted in interfering with it upon that ground. We adopt the reasoning of Mr. Justice Adams' opinion as equally in point here in C. E. Ry. Co. v. McNamara, 94 Ill. App., 188, in which he said in discussing a $3,000 verdict awarded for personal injuries: "The court and jury saw the witnesses and heard them testify; the latter assessed the damages and the former by refusing a new trial approved the assessment, and we are not aware of any sound principle which would warrant us in reversing the judgment because of excessive damages."

A hypothetical question put to Dr. Thompson, a medical witness, who attended plaintiff, which he was permitted to answer over the objection and exception of defendant, it is claimed invaded the province of the jury as to the determination of the fact as to what cause plaintiff's condition was

attributable. In answering that question he was giving evidence as an expert. A perusal of the question and answer does not show either to possess the infirmity claimed. City of Chicago v. Didier, 131 Ill. App., 406, and affirmed on further appeal by the Supreme Court, 227 Ill., 571, furnishes ample authority conclusive against defendant's contention.

The objections made by defendant to the instructions are not well taken. It is said that the court by the second instruction given at the instance of plaintiff "authorized the jury to find damages for anything the direct result of the 'injury complained of,' without requiring that the injury or that the result be caused by defendant's negligence or by this accident." We think this argument sophistical, for the reason that the jury were instructed plainly to the effect that there could be no recovery at all unless they found that the accident was attributable to the negligence of defendant, and that the injuries suffered resulted from that accident as a proximate cause. The jury undoubtedly understood the reference in that instruction to their duty to award damages from the inability of plaintiff "to pursue any ordinary trade or calling," as having reference to and indicating some sort of employment akin to that in which he was engaged at the time of the accident, or which the evidence tended to show, he before that time followed. That would be the natural conclusion and understanding of an ordinarily intelligent jury from the words used, in the light of the evidence before them. If the defendant had desired any further instructions to the jury on these questions, it might have submitted them. Failing to do so, and believing, as we do, that there was nothing in that instruction calculated to mislead the jury to defendant's prejudice, the objection here is unavailing. C. & M. E. Ry. v. Krempel, 103 Ill. App., 1.

We agree with counsel for plaintiff that instruction 3 tendered by defendant and refused, was calculated to mislead the jury, in that it gave undue prominence to the contention, illy sustained by defendant's proof, that the motorman was

in the exercise of due care at the time of the impact, and that consequently negligence was not attributable to defendant. Other instructions given made it clear to the jury that unless the accident resulted from the negligent fault of the motorman there could be no recovery. The jury evidently gave but little credence to the motorman's narration of the occurrence, for if they had their verdict would have been for defendant, regardless of instruction 3 not having been given. On the whole case it is apparent that defendant's interests were well protected by instructions stating the law favorable to its defense. We are in full accord with the practical test as to the soundness of instructions announced in Funk v. Babbitt, 156 Ill., 408, where the court say: "The test, then, is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions."

Measured by this test the instructions given, fulfilled every legal requirement.

There is no reversible error in this record, and the judgment of the Superior Court is affirmed.

*Affirmed.*