## May Day, Plaintiff in Error, v. Marshall E. Sampsell, Receiver, Defendant in Error.

## Gen. No. 14,403.

1. VERDICTS—*when not disturbed.* A verdict of a jury will not be disturbed on review unless it plainly appears that it is so manifestly contrary to the weight of the evidence as to be the offspring of the passion and prejudice of the jury rendering it.

2. INSTRUCTIONS—*approved form as to impeachment of witnesses.* An instruction upon this subject as follows, is approved:

"The jury are instructed that one mode of impeaching a witness is by showing that the witness has made different and contradictory statements on the same point on former occasions. If it appears from the evidence in this case that either of the witnesses has been impeached in this manner, the jury have a right to take into consideration such impeachment in determining the value of the testimony of such witness or witnesses."

3. PERSONAL INJURIES—*upon what injuries recovery must be predicated.* In an action for personal injuries the plaintiff is not entitled to recover compensation for any injuries or ailments which do not arise from, or are not traceable to, the injuries suffered as the result of the negligence of the defendant.

4. PERSONAL INJURIES—*what evidence competent to rebut.* It is competent to show the mode and manner in which a plaintiff has lived prior to an accident from which she claims hysteria has resulted, if such mode and manner of living were such as might have tended to produce such condition of hysteria.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed April 12, 1909.

L. L. SMITH and A. J. ROONEY, for plaintiff in error.

JOHN A. ROSE and FRANK L. KRIETE, for defendant in error.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This cause was submitted to a jury, who returned a verdict in favor of defendant, upon which the trial judge, after overruling the motion of plaintiff for a new trial, entered a judgment of *nil capiat* and for -

costs. Plaintiff brings the record to this court by writ
of error for review and a judgment of reversal of the
trial court's judgment and the award of a new trial.

The action is case for personal injuries suffered by
the plaintiff in alighting from an electrically propelled
car operated under the direction of defendant as re-
ceiver. At the time of the accident plaintiff was a
passenger. The negligence charged is, that on April 7,
1907, while plaintiff was such passenger upon the car
of defendant, and while attempting to alight therefrom,
at the intersection of North Clark street with Indiana
street, "the defendant, through its servants in charge
of said car, so recklessly, negligently and carelessly
managed and operated said car that as a direct result
of said carelessness, the plaintiff, being in the exercise,
of due care for her safety, was thrown with great force
and violence to the ground and injured; that the left leg
and hip of plaintiff were bruised, dislocated and per-
manently injured, her intestines and vital organs were
permanently injured, the spine and back of plaintiff
were permanently injured, her nervous system shocked
and shattered," etc.

Three reasons are discussed, under appropriate as-
signments of error, why the judgment should be re-
versed. They are: First, the verdict is contrary to
the great weight and preponderance of the evidence;
second, the court erred in giving to the jury certain in-
structions at the instance of defendant; and third, the
admission of improper evidence on defense.

That the accident happened to plaintiff at the time
and place averred is demonstrated by the proofs, and
that she was seriously injured as a result of such ac-
cident is likewise established by the evidence. So far
as such facts go, they entitle plaintiff to an award of
damages, providing it was further made to appear
from the proofs that the accident and resulting in-
juries were brought about and occasioned by the neg-
ligent acts charged against the defendant as the pri-
mary and efficient cause of such accident. Axiomatic

principles, so firmly settled as not to be the subject of further dispute, are involved in the first proposition argued for reversal. They are that the jury are the primary judges of the credibility of the witnesses and of the credit to be given to their evidence. That a verdict of a jury will not be disturbed on review unless it plainly appears that it is so manifestly contrary to the weight of the evidence as to be the offspring of the passion and prejudice of the jury rendering it. While the verdict is not conclusive on this court, and we will, as we oftentimes heretofore have had occasion to do, in a proper case, reverse a judgment rendered upon a verdict, yet this prerogative of the court will not be exercised when the case made by the party prevailing is sufficient, in our judgment, to sustain and support such verdict, and the countervailing proof is of that character which involves the determination of the credibility of the several witnesses, which the jury and the trial judge are so much more competent to pass upon with accuracy than we, because we are under the disadvantage of seeing naught but the passive and unresponsive record, while they observe the witnesses during the whole progress of the trial and have visual evidence of their manner and appearance, intelligence or lack of intelligence, their feeling or bias, if any is developed, and therefrom are in a better position to decide which of the witnesses is the most credible and worthy of belief, and to pronounce a more correct opinion upon the weight and probative force of the evidence, than can a court sitting in review. And as said in Eckels v. Cooper, 136 Ill. App. 60: ''To the conclusions of the jury, acquiesced in by the trial judge, we ought to add our adherence, unless we are impelled by the record to the conclusion that the finding of the jury is clearly contrary to the weight of the evidence or the result of passion, prejudice or improper conduct on their part.''

The whole question of defendant's negligence rests for solution of the fact, deducible from the evidence,

as to whether plaintiff fell as the result of the cars moving without giving her an opportunity to alight in safety, after she had started to do so, or whether plaintiff, in attempting to alight while the car was at a standstill, either slipped from the car, or, upon reaching the roadway, slipped thereon and fell and injured herself. If the former is the fact, the defendant is liable; but if the latter is proven by competent evidence to be the cause of the fall of plaintiff and of the resulting injuries complained about, then she is not entitled to recover, and the verdict of the jury must stand. The record discloses a sharp conflict in the evidence. That of plaintiff, without any countervailing evidence in contradiction, is sufficient to entitle her to a verdict for substantial damages. So, the proof of defendant, uncontradicted, entitled it to prevail and to receive the verdict in its favor which the jury rendered. To reconcile this conflict in the evidence was the task and duty of the jury. A painstaking analysis of all the evidence commends to our minds the verdict of the jury and its wisdom in rendering it. We do not hesitate to say that its preponderating force and probity is in favor of the defendant's contention that when plaintiff fell, the car from which she was in the act of alighting was at a standstill, and that her fall is attributable to her slipping, either off from the car while in the act of alighting, or on the roadway in so alighting, or after her feet were on the ground. Under these circumstances, unless error of a prejudicial character in the trial court's rulings upon the evidence, or in its instructions to the jury, appears in the record, we are not at liberty to interfere with the judgment.

Counsel for plaintiff argue that the giving to the jury of the following instruction, at the instance of defendant, was reversible error. Said instruction reads:

"The jury are instructed that one mode of impeaching a witness is by showing that the witness has made different and contradictory statements on the same point on former occasions. If it appears from the evidence in this case that either of the witnesses has been

impeached in this manner, the jury have a right to take into consideration such impeachment in determining the value of the testimony of such witness or witnesses."

This instruction does not tell the jury to disregard the evidence of any witness or witnesses who may have made different or contradictory statements upon the same point on former occasions, but limits the right of the jury to the taking of such fact into consideration in determining the value of the testimony of such witness. It does not necessarily impeach the veracity of such a witness, but has reference more to the reliability of the memory of such witness, and concerns the weight to be given his testimony. It was an instruction of general application to all the witnesses, without specifying any particular one of them. The authorities cited by plaintiff's counsel refer to instructions entirely different from the one here challenged. These authorities relate to instructions in which the jury were told on what grounds they had the right to reject the testimony of an impeached witness; while the instruction criticised directs the jury to take into consideration the probative force of the testimony of a witness who has made different and contradictory statements upon the same point on other occasions, and has no reference whatever to rejecting the testimony of any witness. Therefore we regard such cases as inapplicable to the instruction under consideration.

In Craig v. Rohrer, 63 Ill. 325, the court, in its criticism of an instruction held to be erroneous, say: "A recognized mode of impeaching the credit of a witness is by proof that he has made statements out of court contrary to what he has testified at the trial. Such proof has a direct tendency to impeach either the veracity or the memory of the witness. There is no legal warrant requiring as conditions to affect the credibility of the witness, that the testimony so contradicted should be material to the issue and intentionally false, as asserted by the instructions." Kerr v. Hodge, 39 Ill. App. 546.

In the light of instruction 8, we do not think that the jury could have been misled in their application of the doctrine of impeachment of witnesses to the evidence before them. This instruction informed them that if they believed from the evidence that any witness had wilfully sworn falsely to any material fact, they had the right to disregard all the testimony of such a witness except where corroborated by other credible evidence or by facts and circumstances appearing in evidence.

We find no inherent defect in instruction 16. It states a plain principle of law—that plaintiff is not entitled to recover compensation for any injuries or ailments which do not arise from or are not attributable to the injury suffered as a result of the negligence of defendant. However, there is nothing in this instruction which inhibited the jury from awarding compensation to plaintiff for all the injuries and ills traceable to the accident, if caused by the negligence of defendant, as charged, notwithstanding plaintiff may have suffered other physical ills entirely disconnected with the accident.

The 12th instruction stated a basic principle, determinative of plaintiff's right to recover. It was in every respect proper and was supported not only by defendant's theory of how the accident actually occurred, but was fortified by proof at least tending to sustain such theory. The instruction reads: "If the jury believe from the evidence and the instructions of the court that the plaintiff alighted from the car in safety, and that after having so alighted, she slipped on the pavement and fell, then the plaintiff cannot recover, and your verdict should be not guilty." There is no reversible error in either of the three instructions above discussed.

Among other afflictions which plaintiff contended she suffered as a result of her fall, was "hysteria." She also, in fortification of this claim, testified that before the accident she was in good health. She also testi-

fied she did not visit saloons nor live with any man as his wife. On the contention that to plaintiff's former mode of living was attributable the hysteria from which she suffered, it was necessary and proper to inquire into her mode of life. In this way the reputation of places where she lived and worked, her habits of drinking, her engaging in a brawl with another woman at one time, her sustaining meretricious relations with one of her witnesses, Tom Sherwin, her habits of carousing in drinking resorts, were all, we think, admissible, so that the jury might have an opportunity of judging whether her "hysteria" flowed from the accident or was attributable to her mode and manner of living prior thereto. The "Village Inn," in which plaintiff was "housekeeper" for more than four years, was testified to be a house of assignation by Captain Healy of the Chicago police force. Other officers testified to seeing her drink and, on several occasions, of her being in a state of intoxication. We do not think, all other evidence considered, that the times of these conditions and occurrences were too remote to be admissible as evidence. Much of the testimony of this nature was admitted without objection, and, in our opinion, none to which objection was made and exceptions preserved prejudicially affected the rights of plaintiff on the merits of her case.

Finding no error of a reversible nature in the record, the judgment of the Superior Court is affirmed.

*Affirmed.*