General Exchange Insurance Corporation, Appellant,
v. Janetta McRoy, Appellee.

Gen. No. 8,644.

April term, 1932. Heard in this court at the Opinion filed October 17, 1932. Rehearing denied, opinion modified, refiled and decision adhered to January 3, 1933.

WILLIAM F. SMITH, for appellant.

LEMON & JORDAN, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit by appellee brought against appellant in the circuit court of DeWitt county, to recover upon an insurance policy the value of an automobile claimed to have been stolen from appellee, and its loss by theft, covered by the policy.

There were no questions raised upon the policy and the instructions were substantially free from error.

There was a verdict and judgment in favor of appellee and against appellant in the sum of $500, and appellant has brought the record by appeal to this court for review.

The only substantial errors pointed out are in the court's rulings upon the admission of evidence. Appellee testified: I last saw the car at Jacksonville, Illinois, between eleven and twelve o'clock—ten-thirty to twelve in the morning, the twenty-sixth of August, 1929. I think it was Tuesday, or Wednesday, but I won't be sure. I had gone from here to Jacksonville, Illinois, and was in the car until I parked it. There was no one with me when I went over there to Jacksonville. When I got there, it seems to me, I put the car in a vacant lot, about a block or block and a half away on the first street south. There were two or three other cars parked there. It was a block or a block and a half from the street that goes around the square. I think I parked a block or a block and a half south of there. I think I have found the place since that time; it was not a whole block that was vacant; it was a space, I imagine, about as big as this court room, or a half bigger than the court room—about a half block, I imagine. There were buildings on the side of

the block. This was not a paid parking place, I just drove up and parked.

From Jacksonville appellee drove home to Clinton with her daughter, in her daughter's car and left her own car parked in Jacksonville. Two days later, appellee was in Jacksonville and did not find her car at the place where she had parked it. She went to the police station but did not find the chief of police in and appellee testifies: We went down there and they parked in front, and I went in, and there were some fellows sitting by the desk, in the police station. They were not uniformed. I asked for the chief of police, and they said he wasn't in. I asked them about the car—if they had a Hudson car; that I had lost mine; that I had parked it there and couldn't find it, and I thought maybe somebody had reported it; that I couldn't find it, and I stood there and they went on talking to each other and ignored me and I backed out. None of those persons had on a uniform. That was about ten or eleven o'clock in the morning. I did not see anyone else there. I came home and wrote them a letter—the police a letter. I addressed it "Chief of Police, Jacksonville, Illinois," and I heard nothing from them. I stamped the letter and mailed it at the Illinois Central depot; I did not hear from them. In that letter I asked if they had any report in regard to that car I talked to them about a few days before—the Hudson sedan—and gave the serial number and my license number, and if they did, please let me know and put in a self-addressed and stamped envelope. I never heard from them.

Appellee further testified: "I don't think I parked the car as late as four in the afternoon. I am pretty sure." The court refused to permit appellee to answer the following question, on cross-examination: "Did you tell D. D. Lucier on the 18th of September, 1929, at your home here in the City of Clinton, that you parked your car at 4 p. m., August 26th, at Jackson-

ville?'' Appellee further testified: Yes, I am almost positive I locked the door of my car, but I didn't lock the ignition. The key to that door is out at the house. The key to the ignition is out at the house. I did not tell the adjuster on the day that he was at my home that the ignition was locked but I had since lost the key. I told one of them—I don't know which one—that I locked either the door or the ignition but I did not know which one, and I had lost the keys in moving, but had found them since. I did tell the adjuster that I had lost the key when I was moving. I wouldn't swear about locking the ignition, but I am positive I locked the door. Yes, when I found the car was missing I went to the police station and reported the loss to the station. I didn't come back home without telling anyone.

For appellant, Harold Elliott, desk sergeant of the police station at Jacksonville, testified: I was desk sergeant for the police headquarters on August 26, 1929. The police headquarters are situated there straight down from the northwest corner of the square north two short blocks. I have walked and gone about the business section and residence section of town during the past five years. There was not a public parking space there within a block of town in any direction on August 26, 1929. There has not been a public parking space there within five blocks in any direction during the past four years. No, sir; not a lot. There is public parking on the streets and around the square. We keep a record at police headquarters of the complaints of automobiles made by persons. We keep such a record and did keep such a record during the month of August, 1929. I have searched through all of our records and for the month of August, 1929, to ascertain if there was a complaint made of the theft of a Hudson sedan automobile at any time during the month of August, 1929, by Janetta McRoy. There

was not such a complaint made. I have the regular day records with me. That is night, too. That is the regular record we keep. Defendant's Exhibit "C" is the record that we keep of reports of thefts of automobiles which we kept during the month of August, 1929. Those are the original entries made in that record; three of us made them. I made part of them. There are three shifts, and I make them when I am on duty. When I am not on duty the other sergeants make them. Beginning at page 173, and continuing to page 178 are a part of the regular entries of that record. They are made in the regular course of business and they are true and correct. At that time we kept a record of letters received into the office concerning the loss on theft of automobiles by filing them away. When we receive those letters we make reports or records in this book from the letters at that time on stolen stuff or criminal cases. We made such records of such letters during the month of August, 1929. I examined the letters and files and records in our office to determine whether or not a letter was received during the month of August, 1929, from Janetta McRoy of Clinton, Illinois, complaining of the theft of a Hudson sedan automobile, but I found none. If there had been such a letter received at our office that would have been copied into this book. A letter we always write in this book, but not postal cards. We keep a record of those on stolen cars. Appellant offered these police records in evidence, but upon objection that they were held incompetent and immaterial, the court excluded them.

Appellant offered in evidence a written statement, made by appellee in the presence of two witnesses, on September 18, 1929, in which appellee states, over her signature: "I parked it in a public parking place where parking is free. I cannot describe the exact location except that it seemed to me about 1 block from

the business section. I parked it there about 4:00 P. M. August 26th intending to return for the car in a few days. Two days later I drove to Jacksonville with one of my roomers, E. McCadden, to get my car and discovered it had been stolen. The ignition was locked but I have since lost the key. I didn't know what happened to the car and returned to Clinton, Ill., about 2 days later I returned to Jacksonville, Ill. and interviewed the police who gave me no co-operation, nor did they take the numbers. I had previously written to the Chief of Police at Jacksonville, Ill. I have no idea who took the car and I have no creditors." Appellee further stated in the statement over her signature: "Was Car Door Locked? No Ignition? Yes Transmission, No lock Wheel, No lock Were Police Notified, Yes What Station? Jacksonville, Ill. When (Date and Hour)? 8-28-29 By Whom? Myself How? In person" This statement the court excluded upon the objection made that it was incompetent and immaterial.

It seemed to be the theory of appellee that she had had a car stolen, as a matter of course, and that it made no difference whether she had parked the car in a public parking place or upon someone's private lot, either at 12, noon, or at 4 o'clock in the afternoon, or whether she had locked either the door or the ignition to the car, or neither. Such is not the law.

In *Smith v. Dennison,* 101 Ill. 531, 539, the court held: "Contradictory statements by a witness as to immaterial matters do tend to cast suspicion upon the testimony of a witness, but do not authorize its entire rejection, where he is corroborated by another witness, and not contradicted by any evidence in the case."

And in *Day v. Sampsell,* 148 Ill. App. 88, 92, the court held: "In *Craig v. Rohrer,* 63 Ill. 325, the court, in its criticism of an instruction held to be erroneous,

say: 'A recognized mode of impeaching the credit of a witness is by proof that he has made statements out of court contrary to what he has testified at the trial. Such proof has a direct tendency to impeach either the veracity or the memory of the witness. There is no legal warrant requiring as conditions to affect the credibility of the witness, that the testimony so contradicted should be material to the issue and intentionally false, as asserted by the instructions.' *Kerr v. Hodge,* 39 Ill. App. 546.''

The true rule is expressed in *People v. Halpin,* 276 Ill. 363, 376: ''The cross-examination of a witness as to his occupation, associations and conduct, and as to other things immaterial to the issue, for the purpose of determining his credibility, is a matter to a great extent in the discretion of the court and does not constitute error unless the discretion is abused.''

As to the particular items of evidence in dispute, as to whether appellee parked her car in a public parking place within a block or a block and a half from the square, or whether she parked the car on a private lot and was a trespasser; whether when she parked the car the door was locked or left unlocked, and whether the ignition was locked or not; whether she parked the car between 10:30 in the forenoon of the day in question or not until 4 o'clock in the afternoon of that day, and whether appellee ever wrote a letter to the chief of police of Jacksonville notifying him of the loss of the car, were all questions material to the issue of the theft of the car and the rulings of the court, as cited, constituted reversible error.

It follows that the verdict of the jury and the judgment of the circuit court of DeWitt county are reversed and the cause remanded.

*Reversed and remanded.*

On petition for rehearing opinion modified and decision adhered to.